SeaAIR NY, Inc., Plaintiff–Appellant,

v.

CITY OF NEW YORK, City of New York Fire Department, City of New York Department of Business Services and Robert Grotell, Individually and as the Director of the Mayor's Department of Transportation, Defendants–Appellees.

No. 00–9096.

United States Court of Appeals, Second Circuit.

Argued March 2, 2001.

Decided May 22, 2001.

Donald E. Creadore, Tunick, Kupferman & Creadore, New York, NY, for Plaintiff–Appellant.

Ellen S. Ravitch, Office of Corporation Counsel, City of New York, New York, NY, (Michael D. Hess, Corporation Counsel, Stephen J. McGrath and Deborah

Rand, of counsel), for Defendants–Appellees.

Before WALKER, Chief Judge, POOLER, Circuit Judge, and OAKES, Senior Circuit Judge.

OAKES, Senior Circuit Judge:

SeaAir NY, Inc. ("SeaAir") sued the City of New York and various other municipal defendants (collectively, the "City"), charging that the City violated SeaAir's constitutional rights by restricting the operation of seaplane sightseeing tours. The United States District Court for the Southern District of New York, John S. Martin, *Judge,* granted summary judgment to the City, finding that the restriction did not violate the Supremacy Clause, and that SeaAir did not have a valid due process or equal protection claim. We agree with the district court that SeaAir cannot demonstrate any constitutional violations and we accordingly affirm the district court's decision.

## BACKGROUND

The facts in this case were undisputed and are readily summarized here. The East 23rd Street Seaplane Base, which is operated by a lessee called New York Skyports, Inc., is on city-owned waterfront property. Beginning in March 1999, SeaAir provided seaplane air tours which left from the seaplane base, flew around the metropolitan area for approximately 30 minutes, and landed again at the seaplane base. During the flight, the planes crossed into New Jersey airspace.

The City's regulatory code requires that a seaplane base on city-owned property be issued a permit, which "may be limited by appropriate conditions ... as may be necessary or desirable to insure the public safety and interest[.]" 66 RCNY § 3–04(f) (2000); *see also* 66 RCNY § 3–02. In July 1999, the City issued a permit for the seaplane base that contained the following restriction:

5. To further minimize noise impacts on the general public, commercial air tour operations shall not be permitted at any time. The term "commercial air tour" means any flight conducted for compensation or hire in a powered aircraft where a purpose of the flight is sightseeing.

In response, SeaAir filed suit on July 29, 1999, alleging that the restriction violated the Supremacy, Due Process, and Equal Protection Clauses of the Constitution as well as various federal statutes. The primary point of SeaAir's complaint was that the City was preempted by federal aviation statutes from restricting the operation of seaplanes at the East 23rd Street base. SeaAir also claimed that the City's regulation was arbitrary and unreasonable because it was not based on factual evidence of noise levels.

On August 12, 1999, the district court ordered a preliminary injunction for the duration of litigation against enforcement of the regulation. On August 21, 2000, the district court granted the City's motion for summary judgment. Finding that SeaAir did not engage in interstate air transportation by virtue of its travel into New Jersey airspace during its tours, the district court concluded that there was no federal preemption of the City's regulations. The district court further found that the City's decision not to permit seaplane sightseeing tours did not violate SeaAir's due process or equal protection rights because it was supported by the rational objectives of reducing noise and prioritizing transportation over sightseeing. The district court also ruled against SeaAir on its remaining statutory and Commerce Clause claims, none of which are appealed here.

## DISCUSSION

We review the district court's award of summary judgment to the City *de novo*. *See Greater New York Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 104 (2d Cir.1999). Because the parties agree that there are no material facts in dispute, we need only determine whether the City was entitled to such a judgment as a matter of law. *See id.*

■ As the district court recognized, SeaAir's preemption argument under the Supremacy Clause relies entirely on the conclusion that SeaAir engages in interstate air transportation as defined in 49 U.S.C. § 40102(a)(25) (2000). This is so because if SeaAir does not engage in such transportation, it does not fall under the provision of the Airline Deregulation Act of 1994 that expressly preempts state and local aviation regulations.[1] Section 40102(a)(25) defines "interstate air transportation" as:

> the transportation of passengers or property by aircraft as a common carrier for compensation . . . (A) between a place in—(i) a State, territory, or possession of the United States and a place in the District of Columbia or another State, territory, or possession of the United States[.]

SeaAir principally argues that because its planes fly into New Jersey airspace during the course of their flights, they have traveled "between" two states in satisfaction of this statute.

The merit of SeaAir's position boils down to the proper definitions of "transportation" and "between." The district court quoted *Webster*'s definition of "transport" as "to carry . . . from one place to another." *SeaAir NY, Inc. v. City of New York*, No. 99 CIV 6055 JSM, 2000 WL 1201379, at *2 (S.D.N.Y. Aug.23, 2000). Because SeaAir does not carry its passengers from New York to New Jersey, but instead brings them back to where they started at the seaplane base, the district court concluded, and we agree, that SeaAir does not "transport" them to another state. Similarly, SeaAir does not take its passengers "between" two states, as that term is commonly understood, simply by flying into the airspace of New Jersey. Despite SeaAir's urgings to the contrary, we do not live in a world in which a piece of air can serve as a place for the purposes of creating a "between." Indeed, as the government points out, accepting such a definition of "between" would render the statute nonsensical because a plane would travel through an infinite number of places in both states—not simply between two places—during a flight such as the one at bar.

Moreover, SeaAir's proffered meaning of "place" conflicts with the use of the word in another part of § 40102(a)(25). Section 40102(a)(25)(A)(ii) includes in the definition of "interstate air transportation" transportation between a place in "Hawaii and another place in Hawaii through the *airspace over a place* outside Hawaii." (Emphasis added). If a place could be

---

1. 49 U.S.C. § 41713(b)(1) (2000) specifies that "a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier [.]" An "air carrier" is defined as an entity which provides "air transportation," 49 U.S.C. § 40102(a)(2) (2000), which is defined as

"foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). Thus, in order to benefit from federal preemption, SeaAir must establish that its air tours constitute interstate air transportation, as they certainly do not constitute foreign or mail transportation.

airspace itself, this provision would make no sense. That fact suggests that the "places" to which the statute refers are on the ground.

While it is perhaps a "down-to-earth" notion, we believe that Congress, in devising the language of § 40102(a)(25), used the words "transportation" and "between" in their traditional sense of movement from one place to another, and intended that the movement be from the earth of one state to the earth, not the airspace, of another. We agree with the district court that SeaAir's air tours do not meet these requirements, and that SeaAir therefore cannot establish that the City's regulation of sightseeing flights is preempted.[2]

Even if SeaAir's air tours did qualify for protection from local regulation under the Airline Deregulation Act's preemption provision, the City's regulation might still escape preemption under the exception established in 49 U.S.C. § 41713(b)(3) (2000), which states that a "political subdivision of a State ... that owns or operates an airport" is not limited "from carrying out its proprietary powers and rights." The proprietor exception to federal preemption was the subject of our decision in *Nat'l Helicopter Corp. v. City of New York*, 137 F.3d 81 (2d Cir.1998), where we found that the City had the proprietary right to "promulgate 'reasonable, nonarbitrary and non-discriminatory' regulations of noise and other environmental concerns" for a heliport it owned and leased out at East 34th Street. *Id.* at 88 (quoting *British Airways Bd. v. Port Auth.*, 558 F.2d 75, 84 (2d Cir.1977)). We noted in *Nat'l Helicopter* that the proprietor exception "allow[s] reasonable regulations to fix noise levels at and around an airport at an acceptable amount," *id.* at 92, and upheld evening curfews, weekend bans, and an overall re-

duction in helicopter operations at the heliport. *See id.* at 88–92.

■ Although we do not rely upon it today, our holding in *Nat'l Helicopter* indicates that the City's noise-related regulation of sightseeing flights from the seaplane base would fall comfortably within the proprietor exception. As discussed below, the City's decisions to reduce the number of flights at the seaplane base and to prioritize transportation over tourism were a reasonable means of achieving noise reduction. It seems evident, therefore, that the City's actions comported with their proprietary rights under § 41713(b)(3).

■ Turning to the due process and equal protection claims before us, we find SeaAir's arguments in support of them to be unavailing. In order to state a valid claim for violation of substantive due process, SeaAir must show that the City's regulation was an "exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). As the district court stated, we have held that to meet that standard, the City's action must be "arbitrary, conscience-shocking, or oppressive in a constitutional sense[.]" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995).

■ There is nothing in this record to convince us that the City's restriction of sightseeing flights was unreasonable or arbitrary. The City made the determination that in order to reduce the noise impact on the community, it needed to cut the number of flights from the seaplane base, and of those flights, sightseeing tours were not as beneficial to the City as commercial

2. SeaAir offers additional arguments for why its sightseeing tours should be considered "in-

terstate air transportation," but we find all of them to be without merit.

flights. SeaAir acknowledges that noise reduction is a legitimate governmental objective, but claims that the City has no evidence that eliminating air tours will achieve it. It is reasonable, however, to assume that a reduction in flights will result in a corresponding reduction of noise.[3] *See Nat'l Helicopter*, 137 F.3d at 90 (holding that eliminating a portion of helicopter operations was a reasonable response to excessive noise). Accordingly, the City's restriction did not violate SeaAir's due process rights.

■ SeaAir's equal protection argument, although never clearly set forth on appeal, seems to rely on the noise differences between seaplanes and helicopters to claim that the City's restriction unfairly discriminates against seaplanes. SeaAir makes much of the fact that the district court mistakenly stated that seaplanes add more to ambient noise levels than do helicopters. However, given that helicopters do not even operate from the seaplane base and that, as discussed in *Nat'l Helicopter*, the City has restricted helicopter sightseeing tours as well as seaplane tours in pursuit of a general policy against air tourism, we fail to see how the district court's mistake impacts the inevitable conclusion that there ·has been no equal protection violation here.

### CONCLUSION

In light of the foregoing, the district court's grant of summary judgment to the City is affirmed.

---

3. SeaAir admits in its reply brief that "noise is a natural product of seaplanes," but claims that the noise study it commissioned indicates that seaplanes do not increase the ambient noise levels in the surrounding area. The study, which by its own admission does not . reach a definitive conclusion, actually shows that when seaplanes are operated, the ambient noise level is at the top of the typical range. It therefore cannot be said that the seaplanes do not add to noise levels, nor that their absence would not decrease noise levels.