IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 1998 Session

## PARKS PROPERTIES, ET AL. v. MAURY COUNTY, ET AL.

**Appeal from the Circuit Court for Maury County**
**No. 6707     William B. Cain, Judge**

---

**No. M1997-00235-COA-R3-CV - Filed August 17, 2001**

---

This appeal involves a dispute between Maury County and the developers of a commercial warehouse project. The developers purchased two large metal warehouses based on their understanding that the Director of Community Development and the Maury County Regional Planning Commission had effectively agreed to waive the Southern Standard Building Code's requirement that buildings have automatic sprinkler systems. After the Director of Community Development declined to issue a building permit because the plans did not include a sprinkler system, the developers filed suit in the Circuit Court for Maury County seeking to compel the county to issue a building permit and to recover damages under 42 U.S.C. § 1983 (1994). Following a bench trial, the trial court concluded that Maury County and its Director of Community Development had violated the developers' substantive due process rights and awarded them $445,152.55 in damages and $2,772.80 in discretionary costs. On this appeal, Maury County and its Director of Community Development assert that the trial court erred by concluding (1) that they had violated the developers' substantive due process rights, (2) that the director was not entitled to qualified immunity, and (3) that their actions proximately caused the developers' claimed damages. We have determined that the trial court erred as a matter of law when it concluded that Maury County and its Director of Community Development violated the developers' property interests protectable by substantive due process. Accordingly, we reverse the judgment and remand the case to the trial court with directions that it be dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and JERRY SMITH, J., joined.

George Dean, Nashville, Tennessee, for the appellants, Maury County and Judy Langsdon.

Robert Holloway, Jr., Columbia, Tennessee, for the appellees, Parks Properties and Columbia Warehouses, Inc.

### OPINION

### I.

Joe S. Parks operates the Columbia Tobacco Warehouse in Maury County. In early 1994, Mr. Parks decided to expand his warehouse space in order to increase the amount of time he would

be permitted to conduct tobacco sales.[1]  Accordingly, he decided to construct additional warehouse space on a tract of real property located east of the Tom J. Hitch Parkway in Maury County that was owned by a family partnership named Parks Properties.[2]  He also decided that the project would be a joint venture between Parks Properties and a family-held corporation named Columbia Warehouses, Inc.[3]

Mr. Parks learned that a factory in the City of Columbia was being torn down to make way for a new automobile dealership and that two of the factory's metal buildings were for sale.  One building contained 40,000 square feet of space, and the other 50,000 square feet.  In March or early April 1994, after determining that it would be feasible to dismantle and reconstruct these buildings on the tract owned by Parks Properties, Mr. Parks and Steve Parks met with Judy Langsdon, Maury County's Director of Community Development, to discuss the zoning and planning issues relating to the relocation of these metal buildings.

One of the principle matters discussed at this meeting related to the requirement in Section 402.4 of the Standard Building Code[4] that warehouses containing combustible materials like tobacco must be equipped with an automatic sprinkler system.  Mr. Parks and his son knew that the city water line did not extend to their property and that the water line they planned to install would be inadequate for the type of sprinkler system required by the Standard Building Code.  Because they desired to avoid the considerable expense of constructing a larger water line to their property, Mr. Parks and his son desired to explore with Ms. Langsdon whether any alternatives to an automatic sprinkler system were available.  Ms. Langsdon informed them that she would waive the automatic sprinkler system requirement if the Parks family would agree (1) to install the automatic sprinklers as soon as the City of Columbia extended the city water line to their property and (2) to post a bond to assure that the automatic sprinklers would be installed.  She also stated that the Maury County Regional Planning Commission would have to approve her proposal to waive the requirement of automatic sprinklers in return for a performance bond.  Mr. Parks and his son, believing that Ms. Langsdon was trying to help them complete their project, agreed with these conditions.

Following their initial meeting with Ms. Langsdon, Mr. Parks and Steve Parks began their negotiations to purchase the two metal buildings and to prepare the site plans for the project.  At the same time, Ms. Langsdon notified other local officials of the project and began to prepare a staff report for the planning commission relating to necessary rezoning of the property from an A-2 zoning classification to an M-1 zoning classification. During this process, both the supervisor of the Columbia water system and the city's Director of Grants and Planning opposed rezoning the

---

[1] Government regulations base the amount of time a warehouse is permitted to sell tobacco on the size of the building.

[2] Parks Properties is a general partnership under Tennessee law.  Mr. Parks owns 55% of the partnership, and his sons, Houston, Steve, and Jim, each own 15%.

[3] Columbia Warehouses, Inc. is a Tennessee corporation.  Mr. Parks and Steve Parks each own 50% of the corporation's stock.

[4] Southern Bldg. Code Congress, Inc., *Standard Building Code* (1988 ed.).  This code provided the "required minimum standards for fire prevention" in the State of Tennessee at all times relevant to this case.  Tenn. Comp. R. & Regs. r. 0780-2-2-.01(1)(a) (1990).

property because of the lack of adequate fire protection in the area. In response to this opposition, Ms. Langsdon suggested, and the Parks family agreed, that they would limit the number of occupants in each warehouse to five until they installed the automatic sprinklers.

At its May 2, 1994 meeting, the planning commission agreed to recommend to the Maury County Commission that the property be rezoned to an M-1 zoning classification; however, it deferred acting on the proposed site plan pending receipt of additional information about the property. After extensive discussion, the planning commission also endorsed permitting Parks Properties to erect the warehouses without automatic sprinkler systems, as long as the Parks family agreed to install these sprinklers as soon as their property had an adequate water supply and to post a bond to assure that these sprinklers would be installed.

Believing that they had cleared all the regulatory hurdles, the Parks family decided not to wait for the Maury County Commission to act on the planning commission's recommendations.[5] On May 3, 1994, the day following the planning commission meeting, Parks Properties purchased the two metal buildings for $40,000. In June 1994, Parks Properties paid $45,000 to dismantle the metal buildings and to move the components of the buildings to the proposed site for the warehouses.

In August 1994, Steve Parks met with Ms. Langsdon to review the design for the footers for the warehouses and to obtain permits to construct the footings and foundations. After asking Steve Parks to step into her office, Ms. Langsdon told him that the warehouses could not be constructed without the automatic sprinkler systems required by the Standard Building Code.[6] Steve Parks reminded Ms. Langsdon that the planned water line was insufficient for the sprinklers and that the planning commission had agreed at its May 2, 1994 meeting to allow the warehouses to be constructed without automatic sprinklers as long as the Parks family posted a bond to cover the future installation of the sprinklers.

Much to Steve Parks's surprise, Ms. Langsdon informed him that the minutes of the planning commission's May 2, 1994 meeting did not reflect that the commission had discussed the waiver of the automatic sprinkler system requirement. Steve Parks demanded a copy of the minutes and, after reviewing them, insisted that they did not accurately reflect what had transpired at the planning commission's meeting. Ms. Langsdon then played a tape recording of the meeting that contained no discussion of the Parks Properties warehouse project. Steve Parks demanded to know "What's going on here?" After deciding that Ms. Langsdon had "done a hundred and eighty on us," Steve Parks got "upset" and left Ms. Langsdon's office. Before Steve Parks left her office, Ms. Langsdon reiterated that she would not issue a building permit until the plans for both warehouses called for the installation of automatic sprinkler systems.

---

[5]The Maury County Commission eventually approved rezoning the property to an M-1 zoning classification effective June 20, 1994. The county commission was never asked to address, and did not address, the request for a variance from the automatic sprinkler requirement.

[6]Apparently Ms. Langsdon by this time had discovered the provision in Section 402.4 limiting her authority to waive the automatic sprinkler requirement to circumstances where only noncombustible products will be manufactured or stored in the building. Stored tobacco is, of course, highly combustible.

Following Steve Parks's meeting with Ms. Langsdon, Parks Properties tried unsuccessfully to obtain a clarification from the full planning commission about its May 2, 1994 decision. For whatever reason, the commission sidestepped its inquiries. Finally, on September 6, 1994, the chairperson of the planning commission advised Parks Properties that, notwithstanding what had transpired at the May 2, 1994 meeting, any variance or waiver of the fire safety requirements of the Standard Building Code could only be granted by the Maury County Board of Adjustments and Appeals.[7]

Parks Properties then applied to the Maury County Board of Adjustments and Appeals for a variance from the Standard Building Code's automatic sprinkler requirements conditioned on its agreement to provide a bond to secure the installation of the automatic sprinklers whenever adequate water service was provided to the site. The board discussed Parks Properties' proposal at length during its September 14, 1994 meeting and finally declined to approve the variance after the Chief of Codes of the State Fire Marshall's office informed them that automatic sprinklers were a minimum fire safety standard and that a building could not be legally occupied without the minimum standards being met.

By this time, Parks Properties had spent $40,000 to purchase the two metal buildings, $45,000 to dismantle them and move them to the property on Tom J. Hitch Parkway, and $49,447.61 for the site work on the property. On July 14, 1995, with their building plans in administrative limbo and the disassembled metal buildings lying at the construction site, Parks Properties and Columbia Warehouses, Inc. filed suit in the Circuit Court for Maury County against Maury County and Ms. Langsdon. They sought an injunction requiring the county to issue a building permit and compensatory damages based on four causes of action, including fraudulent misrepresentation, negligent misrepresentation, equitable estoppel, and 42 U.S.C. § 1983 (1994).

Both Maury County and Ms. Langsdon denied liability. The eventual trial was bifurcated. Following a three-day trial of the liability phase, the trial court concluded that Parks Properties and Columbia Warehouses, Inc. had failed to prove their fraudulent misrepresentation, negligent misrepresentation, and equitable estoppel claims. However, the trial court, rejecting Ms. Langsdon's qualified immunity defense, held that Parks Properties and Columbia Warehouses, Inc. had proved that both Maury County and Ms. Langsdon had violated their property rights protected by substantive due process in violation of Section 1983. Following a one-day trial on the issue of damages, the trial court entered a judgment on August 8, 1997, awarding Parks Properties and Columbia Warehouses, Inc. a $445,152.55 judgment against Maury County and Ms. Langsdon. The trial court also awarded Parks Properties and Columbia Warehouses, Inc. $2,772.80 in discretionary costs. Maury County and Ms. Langsdon have appealed.

## II.
### THE STANDARD OF REVIEW

---

[7]The chairperson's letter stated: "Any variance or waiver from the Southern Standard Building Code must come from the Maury County Board of Adjustments and Appeals which is set up within the building code as the only body which can approve deviations from the building code. . . . I trust this will clarify the role of the Planning Commission in this matter."

We turn first to the proper standards of review for the issues presented in this appeal. Because this is an appeal from a decision made by the trial court itself following a bench trial, the now familiar standard in Tenn. R. App. P. 13(d) governs our review. This rule contains different standards for reviewing a trial court's decisions regarding factual questions and legal questions.

With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G. Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Reviewing findings of fact under Tenn. R. App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. *Coles v. Wrecker*, 2 Tenn. Cas. (Shannon) 341, 342 (1877); *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979). There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. *Chapman v. McAdams*, 69 Tenn. 500, 506 (1878); 2 *McCormick on Evidence* § 339, at 439 (John W. Strong ed., 4th Practitioner's ed. 1992) (stating that "the existence of a contested fact is more probable than its nonexistence"). Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 611, 130 S.W.2d 85, 88 (1939); *McBee v. Bowman*, 89 Tenn. 132, 140, 14 S.W. 481, 483 (1890); *Chapman v. McAdams*, 69 Tenn. at 503; *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000); *Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *McCormick v. Aabakus, Inc.*, ___ S.W.3d ___, ___, 2000 WL 1473915 (Tenn. 2000); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998).

Appellate courts review a trial court's finding of fact as a legal matter in one circumstance. When a finding of fact is based on undisputed evidence that can reasonably support only one conclusion, we will review that finding on appeal without Tenn. R. App. P. 13(d)'s presumption of

correctness. *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d at 596; *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 936 (Tenn. Ct. App. 1992).

## III.
### PARKS PROPERTIES' AND COLUMBIA WAREHOUSES, INC.'S
### 42 U.S.C. § 1983 CLAIM

The pivotal issue on this appeal is whether Parks Properties and Columbia Warehouses, Inc. have proved that Maury County and Ms. Langsdon violated their substantive due process rights by declining to issue a building permit for their two proposed warehouses.[8] Both Maury County and Ms. Langsdon insist that the Due Process Clause of the Fourteenth Amendment does not prohibit local building officials from changing their mind before issuing a building permit. Rather than pursuing the issue as framed by Maury County and Ms. Langsdon, we have determined that the issue, more precisely stated, is whether Parks Properties and Columbia Warehouses, Inc. proved that they possessed a property interest protectable by substantive due process in constructing two metal warehouses without installing the automatic sprinkler systems required by the Standard Building Code. We have concluded that the erroneous decision of Ms. Langsdon and the planning commission permitting the Parks family to provide a performance bond in lieu of installing the sprinklers did not entitle Parks Properties to construct the warehouses without automatic sprinklers. If anything, Parks Properties and Columbia Warehouses, Inc. assumed the business risk of proceeding with their project before they had received all the necessary local regulatory approvals.

### A.
### Substantive Due Process Claims

Claims under 42 U.S.C. § 1983 should not be considered in a historical vacuum. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258, 101 S. Ct. 2748, 2755 (1981). This statute is a codification of Section One of the Civil Rights Act of 1871, *Briscoe v. LaHue*, 460 U.S. 325, 337, 103 S. Ct. 1108, 1116-17 (1983), which reflects the Congress's distrust of state officials during the period of reconstruction following the Civil War. Gene Nichol, Jr., *Federalism, State Courts, and Section 1983*, 73 Va. L. Rev. 959, 1008 (1987). Its two-fold purpose was to create a damage remedy against state and local government officials who violated federal rights, *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S. Ct. 502, 505 (1997), and to deter future abuses of power by officials acting under color of state law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 268, 101 S. Ct. at 2760; *Owen v. City of Independence*, 445 U.S. 622, 651, 100 S. Ct. 1398, 1416 (1980).

Section 1983 creates no substantive rights of its own. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 1916 (1979). Rather, it creates a species of tort liability, *City of Monterey v. Del Monte Dunes*

---

[8]Parks Properties and Columbia Warehouses, Inc. did not challenge the constitutionality of the Southern Standard Building Code and did not assert a procedural due process, equal protection, or takings claim. In addition, they have not appealed from the dismissal of their equitable estoppel claim.

*at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S. Ct. 1624, 1638 (1999), that provides a federal cause of action for the violation of rights independently established either in the United States Constitution or federal law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985 (1999); *Kalina v. Fletcher*, 522 U.S. at 122, 118 S. Ct. at 505. Thus, the first step in analyzing any Section 1983 claim is to identify the specific federal right allegedly being infringed. *Albright v. Oliver*, 510 U.S. at 271, 114 S. Ct. at 811-12; *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870 (1989); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692 (1979). There can be no successful claim under Section 1983 unless the defendant has deprived the plaintiff of a right "secured by the Constitution and laws" of the United States.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[9] As interpreted by the United States Supreme Court, the Due Process Clause safeguards rights in two ways. First, procedural due process requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in "life, liberty, or property." Procedural due process protections do not prevent deprivations of "life, liberty, or property" but rather guard against "substantively unfair or mistaken deprivations of property." *Fuentes v. Shevin*, 407 U.S. 67, 80-81, 92 S. Ct. 1983, 1994 (1972).

The Due Process Clause, however, guarantees more than fair process. *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 2267 (1997). It also has a substantive component that bars certain governmental actions regardless of the procedures used to implement them. *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S. Ct. 1708, 1713 (1998); *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665 (1986). Thus, substantive due process is the second way that the Due Process Clause protects "life, liberty, or property."

Substantive due process is an area of the law famous for its controversy and not known for its simplicity. *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 465 (7th Cir. 1988); *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987). Part of its complexity stems from its application to two entirely different sorts of governmental action. The substantive due process analysis applies to both legislative acts and non-legislative or executive acts. Legislative acts, generally including statutes, ordinances, and broad administrative regulations, apply to large segments of society; while non-legislative or executive acts typically apply to one person or a limited number of persons. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 n.1 (3d Cir. 2000).

Typically, a legislative act will withstand a substantive due process challenge if the government identifies a legitimate governmental interest that the legislative body could rationally conclude was served by the legislative act. Legislative acts that burden certain fundamental rights may be subject to stricter scrutiny. *Sammon v. New Jersey Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995). Likewise, a non-legislative or executive act will withstand a substantive due process challenge unless it is (1) arbitrary, irrational, or tainted by improper motive, *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000); *PFZ Props., Inc. v. Rogriguez*, 928 F.2d 28, 31-32 (1st Cir. 1991), or (2) so egregious that its shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. at 846, 118 S. Ct. at 1717; *SeaAIR NY, Inc. v. City of New York*, 250 F.3d 183, 187 (2d Cir.

---

[9]U.S. Const. amend. XIV, § 1.

2001); *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995).

Substantive due process claims do not provide a vehicle for imposing monetary liability whenever someone clothed with governmental authority causes harm. *County of Sacramento v. Lewis*, 523 U.S. at 848-49, 118 S. Ct. at 1717-18. It protects against acts of governmental officials that are so far beyond the outer limits of legitimate governmental action that no amount of process could cure the deficiency. *Natale v. Town of Ridgefield*, 170 F.3d 258, 262-63 (2d Cir. 1999); *Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 288 (4th Cir. 1998). The Due Process Clause is a limitation on the government's power to act. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). It is not intended as a guarantee that governmental officials will not act ineptly, erroneously, mistakenly, or even negligently. *County of Sacramento v. Lewis*, 523 U.S. at 848-49, 118 S. Ct. at 1717-18; *Sinaloa Lake Owner's Ass'n v. Simi Valley*, 882 F.2d 1398, 1409 (9th Cir. 1989); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988). It addresses deliberate conduct intended to injure in some way that cannot be justified by any governmental interest. *County of Sacramento v. Lewis*, 523 U.S. at 849, 118 S. Ct. at 1718; *Daniels v. Williams*, 474 U.S. at 331, 106 S. Ct. at 665.

To prevail on a substantive due process claim under Section 1983, a plaintiff must establish as a threshold matter that it has an interest entitled to protection under the Due Process Clause. *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d at 123; *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995). These interests are limited to interests in "life, liberty, or property" and other interests explicitly protected by other constitutional provisions. Regrettably, the case law provides relatively little specific guidance as to what constitutes a property interest worthy of substantive due process protection. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d at 140.

When a Section 1983 claim is based upon the alleged deprivation of a property interest, the property interest must be something more than either an abstract need or desire or a unilateral expectation of a claimed right. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972); *Carpenter Outdoor Adver. Co. v. City of Fenton*, 251 F.3d 686, 689-90 (8th Cir. 2001); *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.*, 246 F.3d at 5; *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995). Rather, the person claiming the property right must have a legitimate claim of entitlement to it. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998); *Gardner v. City of Baltimore*, 969 F.2d 63, 68 (4th Cir. 1992).

The United States Constitution does not create property interests. They are created and their dimensions are defined by existing rules and understandings that stem from independent sources such as state law. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709; *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 250 (5th Cir. 2000); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d at 130; *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1379 (11th Cir. 1994). However, the courts must look to federal law to determine whether a particular property right is entitled to substantive due process protection. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554, 1560 (1978). For a property right to provide a basis for a substantive due process claim under Section 1983, the right must involve an interest that is deemed to be fundamental under the United States Constitution. *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 516 (1985) (Powell, J., concurring); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d at 140;

*Rabinowitz v. Rogato*, 60 F.3d 906, 910-11 (1st Cir. 1995); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1110 (6th Cir. 1995); *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 (10th Cir. 1992).

## B.
## The "Property Rights" At Issue In This Case

Parks Properties and Columbia Warehouses, Inc. can recover under Section 1983 only if they prove that they possessed a property right entitled to substantive due process protection. Accordingly, we must examine their pleadings and papers to determine the specific property right on which they base their claim. As best we understand it, they assert that they had a property right to erect their two metal warehouses without automatic sprinkler systems following May 2, 1994, when the planning commission approved waiving the Standard Building Code's automatic sprinkler system requirement in return for a cash bond and a promise to install the automatic sprinklers some time in the future.[10] We have concluded, as a matter of law, that there are two reasons why this asserted property right cannot provide a basis for recovery under Section 1983. First, neither Ms. Langsdon nor the planning commission had legal authority to grant variances from the Standard Building Code's requirement that these buildings be sprinklered. Second, the Standard Building Code vests broad discretion in the Maury County Board of Adjustments and Appeals to grant variances from its requirements, and the board has a reasonable factual and legal basis for declining to grant Parks Properties a variance from the code's fire safety requirements.

Section 1983 claims by developers against local building and zoning officials are common, *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982), even though rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process concerns. *PFZ Props., Inc. v. Rogriguez*, 928 F.2d at 31. For these sorts of claims, a protectable property interest is "what is securely and durably yours under state or federal law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983). When seeking a permit or authorization, a developer has a protectable property interest in a permit or authorization only if it can prove that it has a legitimate claim of entitlement to the permit or authorization. *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989).

---

[10]During the September 4, 1994 meeting of the Maury County Board of Adjustments and Appeals, Steve Parks asserted that "we were given permission [to construct the warehouses without automatic sprinklers] from the Planning Commission" and that they were given the "right . . . when we were before the zoning board [planning commission] getting the property rezoned." The trial court appears to have determined that this property right came into existence at the initial meeting when Ms. Langsdon first agreed to permit the Parks family to post a bond in lieu of installing the automatic sprinklers. However, since Ms. Langsdon's proposal was contingent on the planning commission's approval, a property right could not possibly have arisen, if it ever arose, until the planning commission approved the proposal.

The application of this "strict entitlement" test focuses on the extent to which the local authority may exercise discretion in arriving at a decision. *Zahra v. Town of Southold*, 48 F.3d at 680. A property interest protectable by substantive due process exists if the local authority has no discretion to decline to issue a permit, license, or other authorization to an applicant who demonstrates compliance with all pre-existing requirements. *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d at 123; *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1069 (8th Cir. 1997); *Walz v. City of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995); *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d at 1380. On the other hand, no protectable property interest in a permit or authorization exists if the local authority retains broad discretion to grant or deny the permit or authorization. *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.*, 246 F.3d at 5; *Richardson v. Town of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d at 132-33; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826-27 (4th Cir. 1995); *Gagliardi v. Village of Pawling*, 18 F.3d at 192-93; *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d at 918-19.

Parks Properties' and Columbia Warehouses, Inc.'s Section 1983 claim, to the extent that it depends on the actions of Ms. Langsdon and the planning commission to supply a protectable property interest, must fail. It is legally undisputed that Ms. Langsdon, as the local building official, lacked authority to grant these warehouses a variance from the automatic sprinkler system requirement because tobacco and other combustible products were going to be stored in them. The Standard Building Code limited her authority to approve omitting automatic sprinkler systems for Group S occupancies only "where noncombustible products are manufactured or stored."[11] Similarly, the planning commission did not have the authority to approve a variance from the Standard Building Code's fire safety requirements because Section 105.3.1[12] vests this authority solely in the Maury County Board of Adjustments and Appeals. Because both Ms. Langsdon and the planning commission lacked authority to waive the automatic sprinkler requirements, their actions cannot give rise to a protectable property right.

If Parks Properties and Columbia Warehouses, Inc. cannot rely on the actions of Ms. Langsdon and the planning commission, their Section 1983 claim can succeed only if they can demonstrate that they were entitled to a building permit authorizing them to construct the two metal warehouses without installing automatic sprinkler systems. This they cannot do because, as a matter of law, the Maury County Board of Adjustments and Appeals had broad discretion over granting variances from the Standard Building Code's fire safety requirements. The Code itself does not limit the board's discretion. Because of the breadth of the board's discretion under Section 105.3.1 to grant variances, Parks Properties and Columbia Warehouses, Inc. cannot demonstrate that they had a legitimate claim of entitlement to construct warehouses to store combustible materials without installing automatic sprinklers.

---

[11]Standard Building Code § 402.4.1, exception 2.

[12]This section states:

> The Board of Adjustments and Appeals, when so appealed to and after a hearing, may vary the application of any provision of this Code to any particular case when, in its opinion, the enforcement thereof would do manifest injustice, and would be contrary to the spirit and purpose of this Code or public interest, or when, in its opinion the interpretation of the Building Official should be modified or reversed.

One other consideration is relevant to Parks Properties' and Columbia Warehouses, Inc.'s Section 1983 claim. To recover in a Section 1983 action, Parks Properties must demonstrate that Maury County's and Ms. Langsdon's refusal to permit them to construct warehouses without automatic sprinklers was arbitrary and capricious in the strict sense that there was no factual basis for the decision. *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d at 123. A decision by a local official cannot provide a basis for the recovery of monetary damages under Section 1983 if the official paid attention to the evidence and acted rationally on it. A decision cannot be arbitrary and capricious for the purposes of Section 1983 if there is some factual basis for it. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992).

The evidence provides an adequate – even compelling – basis for declining to authorize Parks Properties and Columbia Warehouses, Inc. to construct these two warehouses without installing automatic sprinkler systems. The Parks family testified that they intended to store highly combustible tobacco in these warehouses. Their plans for the warehouses should have triggered heightened fire safety concerns, especially after the City of Columbia opposed rezoning the property because of the lack of adequate fire protection in the area. Because of these fire safety concerns, any responsible local authority, be it a building official, planning commission, or board of adjustments and appeals, would have been justified in declining to approve constructing these warehouses without automatic sprinkler systems.

## C.

We accept as correct the trial court's detailed and thorough findings of fact. At the initial meeting in late March or early April 1994, Ms. Langsdon told Mr. Parks and his son that she would waive the Standard Building Code's automatic sprinkler requirement if the planning commission approved allowing the Parks family to provide a bond to secure the installation of these sprinklers as soon as the site had an adequate water supply. The planning commission approved this proposal at its May 2, 1994 meeting. Believing that they had cleared all the regulatory hurdles, Mr. Parks and his son bought the metal warehouses and arranged for them to be dismantled, moved, and erected on their property. After the Parks family had incurred these expenses, Ms. Langsdon declined to issue a building permit because the plans for the warehouses did not include automatic sprinkler systems. Ms. Langsdon also attempted to cover up her original agreement to accept a bond.

Ms. Langsdon made two significant mistakes during her initial meeting with Mr. Parks and his son. First, she led them to believe that she could waive the Standard Building Code's requirement that these warehouses have automatic sprinkler systems. Second, she led Mr. Parks and his son to believe that the planning commission could approve accepting a performance bond instead of installing the automatic sprinklers. She was wrong on both counts.

While Ms. Langsdon's efforts to cover up her mistakes were deliberate and improper, we find no evidence in this record that her initial offer to accept a performance bond in lieu of actually installing the automatic sprinklers was anything more than a mistake. There is no evidence that she set out to damage the Parks family or that she had any other improper motive for offering to accept a bond in the place of installing the automatic sprinkler system. While Ms. Langsdon's ill-advised attempts to coverup her mistakes following the planning commission's May 2, 1994 meeting might conceivably shock all but the most jaded citizens, the fact that she was mistaken initially about her authority under the Standard Building Code does not. As a practical matter, it is not altogether

uncommon for local officials to make mistakes. In any event, it was not Ms. Langsdon's attempt to cover up her mistakes that damaged the Park family; it was her initial mistaken offer to waive the Standard Building Code's automatic sprinkler requirements.

In the final analysis, the trial court's judgment rests on three errors of law: that Ms. Langsdon had the authority to waive the Standard Building Code's automatic sprinkler requirements for these warehouses, that the planning commission had the power to approve the waiver of these requirements, and that Parks Properties and Columbia Warehouses, Inc. had a protectable property interest in Ms. Langsdon's erroneous agreement to waive these requirements. Based on the facts found by the trial court, we conclude that neither Parks Properties nor Columbia Warehouses, Inc. had a property interest protectable by substantive due process and, therefore, that their Section 1983 claim must fail.

**IV.**

The courts should dismiss a Section 1983 complaint once they determine that the complaining party lacks a protectable liberty or property interest. *See, e.g., Dix v. County of Shasta*, 963 F.2d 1296, 1301 (9th Cir. 1992); *Dube v. State Univ. of New York*, 900 F.2d 587, 589 (2d Cir. 1990). Accordingly, because we have determined that Parks Properties and Columbia Warehouses, Inc. have failed to establish that they had a protectable property interest in constructing the warehouses without automatic sprinklers, we need not reach the issues of Ms. Langsdon's qualified immunity or damages. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. at 61, 119 S. Ct. at 990 ( holding that a court need go no further after concluding that a plaintiff's "due process claim falters for lack of a property interest"); *Triomphe Inv'rs v. City of Norwood*, 49 F.3d 198, 204 (6th Cir. 1995).

We reverse the judgments awarding Parks Properties and Columbia Warehouses, Inc. $445,152.55 in damages and $2,772.80 in discretionary costs and remand the case to the trial court with directions to enter an order dismissing the complaint against Maury County and Ms. Langsdon with prejudice. We tax the costs of this appeal jointly and severally to Parks Properties and Columbia Warehouses, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE