IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2004 Session

## THELMA WILLIAMS v. JEFF TROYER, ET AL.

Appeal from the Chancery Court for Maury County
No. 02-489     Robert Holloway, Judge

No. M2003-01573-COA-R3-CV - Filed December 15, 2004

Plaintiff filed suit asserting that she was the owner by adverse possession of four acres of farmland in Maury County. Defendants, who purchased adjoining property in 2001, assert that they are by deed the true and rightful owners of the disputed parcel. The trial court ruled that Plaintiff was the owner of the property by adverse possession based on a finding that she and her predecessors in interest had possessed the property visibly, exclusively, actually, continuously, openly, and notoriously for twenty years. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed.**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., and PATRICIA J. COTTRELL, J., joined.

Trippe S. Fried, Nashville, Tennessee, for the appellants, Jeff and Sherry Troyer.

Scott C. Williams and Stephanie S. Maxwell, Columbia, Tennessee, for the appellee, Thelma Williams.

### OPINION

This appeal arises out of the filing of a Complaint for Declaration of Title by Adverse Possession. In 1972, Plaintiff's husband, Clyde Williams, purchased 77-11/30 acres, identified as Tax Map 31, Parcel 7, Maury County, Tennessee, from Opal Reed. Plaintiff inherited the property from her husband Clyde Williams upon his death in January 1996. She contends that the disputed parcel, approximately four acres, was part of the property her husband purchased from Ms. Reed in 1972. Further, Plaintiff contends that she and her predecessors in interest have actually, visibly, openly and notoriously exercised dominion and control over the disputed parcel for more than thirty years.[1] Defendants, who purchased adjoining property in 2001, claim the property they purchased,

---

[1] Opal Reed had owned the property since 1948. Counting the time Ms. Reed owned the property, Plaintiff contends that she and her predecessors in interest have adversely possessed the disputed parcel for fifty years.

designated as Tax Map 31, Parcel 18, contains the disputed parcel and that Plaintiff has no right, title or interest in the disputed parcel.

Prior to the 1980's, tax maps in the office of the Assessor of Property for Maury County identified Map 31, Parcel 7 (Plaintiff's property) as containing 77-11/30 acres. The tax maps of the Assessor of Property were redrawn in the 1980s. Ever since the tax maps were redrawn, the disputed parcel has been identified as part of Parcel 18, not Parcel 7 as before. However, the records of the Assessor of Property also reveal that the total of the assessed acreage for Plaintiff's property at Map 31, Parcel 7 did not change when the tax maps were redrawn and that Plaintiff has been taxed on the same acreage since her husband acquired the property in 1972.[2] Plaintiff confirmed this by testifying that neither she nor her husband ever received a notice from the Assessor of Property that the acreage upon which her property was taxed had changed.

After purchasing the adjoining property in 2001, Defendants installed a gate in the fence bordering the disputed parcel. It was shortly after the installation of the gate that Plaintiff learned that the ownership of the parcel was disputed, which prompted Plaintiff to commence this action.

Following a bench trial, the trial court ruled that Plaintiff was the owner of the disputed parcel. The final order reads in pertinent part:

> Plaintiff, and her predecessors in title, have possessed the property in question visibly, exclusively, actually, adversely, continuously, openly, notoriously, and under claim of right, for more than twenty years, the period required for adverse possession without claim of right or title. Plaintiff has title to the disputed property through adverse possession.

Defendants appeal arguing that Plaintiff failed to establish the elements of adverse possession and that they are the true owners, by deed, of the disputed parcel.

**Standard of Review**

On appeal from a bench trial, we review the record *de novo* and presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We also give great weight to a trial court's determinations of credibility. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Construction, Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Tenn. R. App. P. 13(d) requires appellate courts to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. There is a reasonable probability that a

---

[2]The acreage actually changed but only by an insignificant fraction of a acre.

proposition is true when there is more evidence in its favor than there is against it. Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Parks Props. v. Maury County*, 70 S.W.3d 735, 741 (Tenn. Ct. App. 2001); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

The presumption of correctness in Tenn. R. App. P. 13(d) requires appellate courts to defer to a trial court's findings of fact. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). Because of the presumption, an appellate court must leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more likely to be true. *Parks Props. v. Maury County*, 70 S.W.3d at 742. For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact. No such presumption of correctness attaches to the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998).

### Adverse Possession

To establish adverse possession, a plaintiff must show that she had exclusive, actual, adverse, continuous, open and notorious possession of the disputed parcel for the entire prescriptive period. *Tidwell v. Van Deventer,* 686 S.W.2d 899, 902 (Tenn. Ct. App. 1984). For those individuals whose possession thereof is by color of right or title, that prescriptive period is set by statute at seven years. Tenn. Code Ann. § 28-2-101. A plaintiff without claim of right or title to the property must demonstrate that he or she adversely possessed the property for twenty years. *Lemm v. Adams*, 955 S.W.2d 70, 73 (Tenn. Ct. App. 1997); *Hallmark v. Tidwell*, 849 S.W.2d 787, 792-93 (Tenn. Ct. App. 1992). In ruling on this matter, the trial court applied the latter criteria, thus requiring proof of a prescriptive period of twenty years.[3]

Plaintiff presented evidence that she, her husband and son had used the disputed parcel growing tobacco, grazing cattle, cutting hay and maintaining a wire fence that partitions off the disputed parcel from Defendants' land since her husband purchased it in 1972. Evidence was presented to establish that the now somewhat dilapidated fence along the disputed boundary line had been there for decades. She explained, "It's been there ever since we owned it. Of course, we have had to patch it up, like if a tree blows over it or if a cow comes through it and knocks it down. . . ."

---

[3]Both parties claim that the disputed parcel was part of the tract belonging to their predecessors in interest, thus color of title is disputed.

Plaintiff's son, Harold Williams, worked the 77 acre farm, and the disputed parcel, for more than thirty years. He testified that he tended the land while his mother owned it, while his father owned it, and even prior to that while he and his family worked the land as sharecroppers. He identified the disputed parcel as being part of the farm referred to as the "9-acre field." He testified as to the variety of ways he and his family utilized the disputed parcel, stating that at "one time we had a tobacco patch there, and we had a little garden there beside of it. We've cut hay off of that field . . . several times. Just whatever we needed to do, we've done it, because that is our land. We just used it for whatever we wanted to do with it."

Opal Reed's son, Harold Reed, was raised on the property his mother sold to Mr. Williams. He testified that the disputed parcel was part of that property and that he and his family erected the fence that partitions off the disputed parcel in order to maintain their cattle. He also testified that no one had ever questioned his family's ownership of the disputed parcel.

Defendants testified that when they purchased their property, there were no indications that the ownership of the now disputed parcel might be in question. Jeff Troyer stated that he never saw Plaintiff on the property and that he bush-hogged, cut down trees, picked up trash and even hit golf balls on the disputed parcel. However, both Defendants admitted that they had seen Plaintiff's cows on the disputed parcel. They also admitted that they were aware that Plaintiff had given someone permission to hunt on the disputed parcel in consideration for bush-hogging the property.

The burden of proof is on the one alleging adverse possession. *See Tipton v. Smith*, 593 S.W.2d 298, 300 (Tenn. Ct. App. 1979). Adverse possession is never to be presumed. *Drewery v. Nelms*, 177 S.W. 946, 947-48 (Tenn. Ct. App. 1915). In order to be adverse, the possession must be open, notorious, continuous, actual and visible. *Sequatchie Val. Coal & Iron Co. v. Coppinger*, 32 S.W. 465 (Tenn. 1895). The caliber of proof necessary to show the required elements is dependent upon the use to which the land is susceptible. *Blankenship v. Blankenship*, 658 S.W.2d 125, 127 (Tenn. Ct. App. 1983). The degree of proof necessary to establish the requirements of adverse possession depends on the nature and character of the land in question. *Panter v. Miller*, 698 S.W.2d 634, 636 (Tenn. Ct. App. 1985) (citing *Blankenship v. Blankenship*, 658 S.W.2d 125 (Tenn. Ct. App. 1983)). Therefore, the burden is on our plaintiff and in order to prevail on her adverse possession claim, she must prove that the possession was open, notorious, continuous, actual and visible, *see Panter*, 689 S.W.2d at 636, and the caliber of that proof is dependent upon the use of the property or that to which it is susceptible. *See Blankenship*, 658 S.W.2d at 127.

This court took into consideration the nature and character of the land in determining whether the claimant's possession had been sufficient to establish ownership in *Panter v. Miller*, wherein the party claiming ownership by adverse possession was the defendant. The proof showed that in 1972 the disputed land was marked by the defendant's predecessor in title who bulldozed and clear cut a line around the land, that in 1974 the defendant purchased the land, planted trees, put up posted signs around the property and, on occasion, picnicked on the property making plans for the construction of their home, and in 1978 erected outbuildings in contemplation of building a home. Based on the above evidence, the *Panter* court held that "bulldozing and clear cutting around one's claimed line

-4-

and placing posted signs on rural, unimproved land constitutes notice to the world of an adverse claim just as much as fencing in city property would constitute an open and notorious claim." 689 S.W.2d at 636, *see also Pullen v. Hopkins, Clark & Co.*, 69 Tenn. 741 (1878). That court went on to state:

> One does not ordinarily fence in inaccessible mountain land to show ownership. It is ordinarily done by marking or painting trees and putting up signs. This is exactly what the defendant did. The land was not susceptible to farming. About the only other thing the defendant could have done to make his possessory claim any clearer to the public at large would have been to hire armed guards to shoot anyone who set foot on the land.

*Panter*, 689 S.W.2d at 636.

This court again took into consideration the nature and character of the land in determining whether the claimant's possession had been sufficient to establish ownership in *Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App. 1987). The dispute in *Catlett* pertained to land that had been abandoned and on which no taxes had been paid since 1942 until it was purchased at a tax sale in 1960 by Dexter Moore, the plaintiffs' predecessor in title. The Clerk of the Circuit Court issued a deed to Moore, by virtue of which Moore held himself out as the owner of property which included the disputed property. Moore used the disputed property to pasture his cattle and harvest timber.

The *Catlett* plaintiffs purchased the property from Moore in 1968. Thereafter, the *Catlett* defendants claimed ownership of the disputed property, insisting the deed issued to Moore in the tax sale did not include or convey the disputed property.[4] The trial court concluded the deed did not include or convey the disputed property to Moore; nevertheless, the trial court held:

> [T]here was evidence that the plaintiffs exercised dominion and control over the subject property. Indeed, the dominion and control as exercised by them was about as "adverse" as one could imagine – they sold parcels off of it. Plaintiffs' predecessor in title, Mr. Dexter Moore, pastured cattle on the subject premises. Although Mr. Dexter Moore certainly could have made use of this property in some manner that would have been more "adverse" to the owners than he actually did, nevertheless he did exercise such dominion and control over it and did so openly, so that such dominion and control amounted to adverse user.

*Catlett*, 731 S.W.2d at 545. Based on the foregoing, the trial court awarded the disputed property to the plaintiffs and the defendants appealed. The issues on appeal required the court to examine the

---

[4]Like the facts before us, the defendants in *Catlett* presented evidence that the lower tract had been dropped from the tax records after 1942 and was not assessed for taxes again until 1972, when the tax maps were revised. Defendants further insisted that the lower tract was owned by a previous owner's heirs, most of whom had conveyed their interest in the land to the defendants by deeds which were of record.

nature and character of the land. The record established that from 1942 to 1960 the disputed property was landlocked and of little value but that in 1960 Moore began using the property to pasture his cows and cut timber from the land and that a dike was built by an adjoining landowner in the 1970's enabling the development of the property. After the plaintiffs purchased the property in 1972, they built a road, erected a fence with a locked gate, and allowed friends to hunt, fish and camp on the land. The *Catlett* plaintiffs also cut and sold timber from the disputed property. The appellate court found this evidence sufficient to affirm the trial court's ruling that the plaintiffs had established ownership by adverse possession. *Catlett,* 731 S.W.2d at 546.

Here, Plaintiff established that she, her husband and son had continuously used the disputed parcel for thirty years growing tobacco, grazing cattle, cutting hay, tending a garden and maintaining the wire fence at issue. As her son testified, they just did "whatever we needed to do, we've done it, because that is our land. We just used it for whatever we wanted to do with it." We find the caliber of evidence before us to be as convincing as that in *Panter* and *Catlett*, wherein each party claiming adverse possession prevailed. Therefore, we find the evidence does not preponderate against the trial judge's finding that Plaintiff and her predecessors in interest had exclusive, actual, adverse, continuous, open and notorious possession of the disputed parcel for twenty years.

## In Conclusion

This matter is before us accompanied by the presumption of the correctness of the facts as found by the trial court, which will not be disturbed unless the evidence preponderates to the contrary, and we are unable to conclude that the evidence preponderates against the trial court's findings. We also find no error of law. Accordingly, we affirm the judgment of the trial court and remand this matter for such proceedings as may be necessary. Costs of appeal are assessed against the Appellants, Jeff Troyer and Sherry Troyer.

_____
FRANK G. CLEMENT, JR., JUDGE