IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2008 Session

# DONNIE VAUGHT, ET AL. v. ALAN JAKES, SR. and wife DEBORAH JAKES, ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 04-9382 CV     Donald P. Harris, Judge**

---

**No. M2007-01858-COA-R3-CV - Filed July 29, 2009**

---

A group of Rutherford County landowners whose property abutted one side of a private road which they maintained at their own expense filed a suit for trespass against a neighbor and developer who used the same road for access to houses he was building on the other side. Their suit also included a due process claim against the County for erroneously granting building permits for those houses. At the conclusion of the plaintiffs' proof, the trial court announced that it agreed that the building permits were granted in error, but it ruled that the county's action was an innocent error rather than a due process violation. The trial court also granted the developer's motion to dismiss the plaintiffs' claims against him, holding that he was entitled to use the road because of a permanent easement he had acquired from his predecessors-in-interest. We affirm the trial court's dismissal of the due process claim. However, we vacate its dismissal of the trespass claim because the plaintiff was able to present evidence that the individual who sold the property to the defendant had abandoned the easement and, thus, that the defendant had no right to use the road. We remand this case for further proceedings to give the defendant the opportunity to present evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Vacated in Part**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Jerry E. Farmer, Murfreesboro, Tennessee, for the appellants, Donnie Vaught, et al.

Mark Allen Polk, Murfreesboro, Tennessee, for the appellees, Alan Jakes, Sr. and wife Deborah Jakes, et al.

James C. Cope, Thomas S. Santel, Jr., Murfreesboro, Tennessee, for the appellee, Rutherford County, A Political Subdivision of the State of Tennessee.

# OPINION

## I. An Old Road

The disputed road in this case is located in a rural area of Rutherford County. The earliest references to the road in the record are found in a 1930 deed from E.I. Rion to Ms. Annie Todd and a 1932 deed from J. F. Lasiter to L.F. Todd conveying respectively a one-third interest and a two-thirds interest in the same 100 acre tract "bounded on east by public road (1930 deed) and "bounded on the east by the road" (1932 deed). Several witnesses who grew up in the area testified that they knew the road as "Todd's Lane," and that it was "an old country lane," or "an old wagon road." At some point Todd's Lane acquired its current name of Bowen Road.

The proof shows that Bowen Road is a narrow, one-lane road that has never been paved. It springs northward from Trimble Road, a paved county road that runs from southwest to northeast. Bowen Road does not go anywhere other than to privately-owned farm properties along its length before it loses its character as a road. Most of the plaintiffs in this case are members of the Todd family by blood or marriage. They own land on the west side of Bowen Road which was part of L.F. Todd's original 100 acre tract.[1] The individual defendants are all members of the Jakes family. They are the current owners of land located between the east side of Bowen Road and Trimble Road.

In the 1950's, Grover Cleveland Barrett owned a farm which abutted Trimble Road on the east and the disputed road on the west. Mr. Barrett's grandson James Campbell testified that he milked cows on his grandfather's farm between 1956 and 1959. He further testified that Mr. Barrett cultivated all the way to a line of wire fence that bounded the west side of his property and adjoined "Todd's Lane." There was one place where the fence wire could be pulled away to allow access to the road, but "it wasn't a gate that would swing open." Mr. Campbell testified that he never knew the road to be a public road. In 1973, Barrett's farm was conveyed to Roy and Marie Dye. According to the deposition of Willard Richardson, a neighbor and former Rutherford County Road Superintendent, the Dyes never used the unpaved road.

In 1974, Henry and Lewis Parsley and their wives purchased the Dyes' farm. They acquired two other contiguous tracts in 1986 and combined the properties. They raised cattle and farmed the land, 419 acres in all, using two separate entrances along Trimble Road to gain access to their property. A continuous line of trees had grown up along the old wire fence on the western boundary of their land, cutting it off almost completely from Bowen Road. There was a makeshift gate in the wire fence that the Parsleys used on a few occasions to move hay from their barn by way of the road. The proof showed that neither that gate nor the barn was on the property later acquired by the Jakes defendants.

---

[1] The affidavit of Faye Todd Trent and Terry Todd states that no conveyance of the 100 acre property "has occurred since 1932 except by devise or by operation of the law of intestate succession."

The Parsleys' northernmost parcel stretched across both sides of Bowen Road. In 1974 or 1975, Henry Parsley asked the Rutherford County Roads Superintendent, James Comer, if the Parsleys could obliterate the part of Bowen Road that entered that parcel so they could use the entire property for farming. Mr. Comer said that the road was not on the county maps, so the Parsleys could do what they wanted. They accordingly plowed up that part of the road.

Some time between 1981 and 1985, Billy Worley and Bubba Young installed a locked metal gate across Bowen Road to keep hunters and other trespassers off their land.[2] The gate was at the intersection of Bowen Road and Trimble Road, and it totally blocked access to the unpaved roadway from Trimble Road. The Parsleys had obtained a key to the lock from one of the Todd heirs, but as we noted above, they only used Bowen Road occasionally. Henry Parsley testified that he used the road no more than four times in fourteen years. His brother, who "primarily looked after the farm" may have used it somewhat more frequently.

In 1988, the Parsleys sold their land to Ronald D. Baltz. He considered the portion of the land abutting Trimble Road to be "the front side of my farm," and he used the same entrances on Trimble Road for access as did the Parsleys. He did not have a key to the gate at the entrance to Bowen Road. He testified that he used that road only once, to pick up a load of water pipe for a neighbor when the gate was unlocked.

In 1994, Plaintiffs Dwight Roberson and his wife Brenda Roberson bought a 33 acre wedge of land on the east side of Bowen Road. The tract widens as it extends northward from the intersection of Bowen Road and Trimble Lane until it abuts the Baltz property. The Robersons built a home on their property. Since they were able to keep an eye on the traffic entering Bowen Road, the gate was left open, and it was eventually removed. The Robersons conveyed a portion of the property to their daughter and their son-in-law, plaintiffs Ashley and Gary Young. The Youngs built a house on their property for themselves and their two children.

On August 6, 1994, the Todd heirs entered into an "Agreement for Easement" by which they granted "unto each other, their heirs and assigns, a perpetual easement over and across their respective said lands and running with said lands for the purpose of ingress and egress from and to the Trimble Road." There were eleven signatories to the document. Pursuant to their agreement, the plaintiffs all contributed money, material and services to improve Bowen Road. The Robersons and Youngs subsequently entered into a similar right of way agreement, which mutually obligated them to maintain the portion of Bowen Road which abutted their properties.

---

[2]Plaintiff Billy Worley's wife was a niece of Otis Todd, L.F. Todd's grandson. Bubba Young owned property on Bowen Road north of the Todd property. Billy Worley testified that they installed the gate as a safety issue, because members of the public were going up the road to hunt deer and rabbits, and they "just didn't know who was going back in there. So we locked it up."

## II. NEW NEIGHBORS

Around 1997, Ronald Baltz contacted Kevin Perry, a realtor/auctioneer, for the purpose of selling off portions of his farm. Alan Jakes Sr., a builder and developer, bought one tract of 29 acres which fronted Trimble Road. In 2001, Mr. Baltz again contacted Mr. Perry to have some additional land auctioned off. Mr. Baltz was hoping to get the best price possible, and he asked Mr. Perry if it would be possible to sell tracts of land along Bowen Road for home sites.

Kevin Perry testified by deposition that he spoke to Rutherford County Planning Director John Davis and asked him that question. Mr. Davis reportedly told him that no such tracts could be sold, because they would not be abutting a public road. He also informed Mr. Perry that all the tracts he sold had to have a minimum of 50 feet of frontage touching a public road. Mr. Baltz also called the Planning Department and was told that he could not cut lots off Bowen Road.[3] According to Mr. Perry, "[w]hen Mr. Davis told me he would not allow us to cut tracts off this road, that road became worthless to me as an auctioneer." Thereafter, Mr. Perry ordered a survey, and divided the Baltz property into a number of tracts, all of which fronted on Trimble Road.

On June 9, 2001, Mr. Perry conducted an auction of the Baltz property. Mr. Jakes was the successful bidder on two parcels, one of 13.52 acres, the other of 49.55 acres. The larger parcel, the development of which led to this lawsuit, was of irregular shape. Most of its acreage abutted Bowen Road, but it also included a long 50 foot wide strip which extended all the way to Trimble Road. Mr. Jakes subdivided the parcel, conveying one five-acre tract to his son, Alan Jakes Jr. and his wife, and another to his daughter, Amanda Burks, and her husband, Chad Burks, while retaining most of the acreage for himself.

The tracts he conveyed did not include any part of the 50 foot wide strip that connected to Trimble Road, and therefore they only adjoined Bowen Road. Although Mr. Perry and Mr. Baltz both testified that the Rutherford County Planning Director told them that Mr. Baltz could not subdivide his land into home sites along Bowen Road, the Jakes defendants applied for and managed to obtain Certificates of Zoning Compliance and Building Permits for a house on each of the three properties. Alan Jakes, Sr. was listed as the contractor on the building permits.

At some point, Mr. Jakes met with the Todd heirs and the Robersons to request permission to join their road maintenance agreements and to obtain easement rights on Bowen Road. They asked him why he didn't use the fifty-foot-wide strip that connected his land to Trimble Road. He responded that it would cost him too much to develop.[4] The neighbors refused to give him permission to use Bowen Road.

---

[3] Mr. Davis testified that it was possible that Mr. Baltz talked to him about subdividing his property, but he just didn't remember.

[4] Plaintiff Douglas Vaught, who has been employed in the civil engineering field since 1984, prepared an estimate of costs for the defendants' alternative access from Trimble Road, which was entered into the record. The estimated amount was $12,378.25.

Nonetheless, Alan Jakes began construction of the three permitted houses, using Bowen Road for transportation of equipment and building materials. He cut driveways for each property through the tree-lined bank that separated them from Bowen Road. The neighbors complained about the increased traffic, the dust, and the noise, and Ms. Roberson complained about the danger to her grandchildren from speeding vehicles. Mr. Jakes dismissed their complaints, and he, his son and his son-in-law adopted a very hostile and combative attitude towards the neighbors.

At one point, Brenda Roberson tried to prevent a truck with a load of blocks from driving over a box culvert on Bowen Road that she feared could not handle the weight. She asked the driver if he could forklift the blocks in, as she and some of the other neighbors had done when they built their own houses. Alan Jakes appeared on the scene and according to the testimony of Ms. Roberson,

> He was very, very, very angry. He came up to me, and I thought he was going to physically accost me. He got in my face, and he told me – let me get my words clear. He told me I had no right to interfere in him using that road. It was a county road. And I had no right to interfere in the building of his son's property. He told me, 'I am a self-made millionaire; I am a contractor; and I know how to get around things.'"

After Alan Jakes, Jr. moved into the house built by his father, he began operating a farrier business from his property. As a result, trucks towing horse trailers became a regular feature of traffic on the one-lane Bowen Road.

### III. PROCEEDINGS IN THE TRIAL COURT

On September 24, 2004, while the defendants' houses were still under construction, several of the Todd heirs, together with the Robersons and Ashley Young filed a complaint for trespass in the Rutherford County Chancery Court. They named as defendants Alan Jakes Sr. and his wife, Alan Jakes, Jr. and his wife, and Chad and Amanda Burks. The Complaint stated that Bowen Road had been a public road prior to 1974, but that it lost the status after that date because the County stopped maintaining it.

The plaintiffs acknowledged that when Bowen Road became private, all the abutting landowners retained a private easement for access to their parcels along the road as a matter of law. They alleged, however, that the Parsleys and Ronald Baltz both abandoned the easement and that the Jakes defendants therefore did not acquire any right to use the road after they obtained their parcels, making all such uses intentional trespasses.

The plaintiffs further alleged that by moving heavy construction equipment over Bowen Road the defendants were damaging it, and they asked for an injunction against further use of the road as well as for compensatory and punitive damages. The trial court granted the plaintiffs an injunction to prevent the defendants from using Bowen Road for heavy construction vehicles, conditioned on

the posting of a $25,000 bond. The plaintiffs were unable to post the bond, and the defendants completed construction of the homes.

The plaintiffs amended their complaint several times, adding due process and inverse condemnation claims against Rutherford County, and naming the Rutherford County Highway Commission and the Highway Superintendent as additional defendants. The case was tried on the plaintiff's Revised Fourth Amended Complaint, which was filed on September 14, 2005. That complaint did not include an allegation that Bowen Road had ever been a public road.

The plaintiffs asked the court for a declaration that Bowen Road was a private road and that the plaintiffs had the right to exclude the defendants from using it. They also claimed that the County had violated their substantive due process rights by issuing building permits to Mr. Jakes and his family members without giving the plaintiffs notice or the opportunity to be heard. They asked for compensatory damages for diminution of the value of their property. In the alternative, they asked for a declaration that Bowen Road was a County Road and that the County should accordingly assume responsibility for its maintenance.

The plaintiffs filed a motion for summary judgment on February 28, 2006. The County filed a cross-motion for summary judgment, contending that the inverse condemnation claim was barred by the statute of limitations. In an opinion letter dated, April 10, 2006, the trial court granted the plaintiffs' summary judgment motion in part by ruling that Bowen road is not now a public road, because it has never been listed in the county road book, such listings having been required by State law since 1974. On August 15, 2006, the trial court granted the county's cross-motion for summary judgment on the inverse condemnation claim, but allowed the due process claim to stand.[5]

The trial of this case was conducted on February 21 and 27, 2007 before Judge Donald Harris, who sat by designation. Eleven witnesses testified in person, including three of the plaintiffs. Excerpts from the depositions of three witnesses who were unavailable to testify were read into the record. The history of Bowen Road as discussed in the first section of this opinion is largely derived from the trial testimony of present and former owners of property adjoining the road.

A number of County officials and employees were called to testify. Willard Richardson was County Road Superintendent from 1984 to 1992, and Mike Williams was his successor and is the current Rutherford County Road Superintendent. Both were questioned as to the legal status of Bowen Road. Both agreed that it was not a county road during their tenures and that the county did not perform maintenance on the road during their terms in office. But neither was able to testify unequivocally that Bowen Road had never been a county road,

Mr. Williams also testified that current standards require that a roadway be 50 feet wide with a 24 foot paved roadbed before it can be accepted as a county road and that Bowen Road did not

---

[5]The orders were entered by different judges, Chancellor Corlew and Judge Rogers, who both later recused themselves from the case.

meet those standards. A set of tax maps dating from 1974 to 2004 was entered into the record. Bowen Road first appears by name on the tax map in 1985. Mr. Williams testified that the County will not maintain a road if it is not in the county road book, even if it can be found on a tax map.

Other evidence in the record as to the prior status of Bowen Road was contradictory or equivocal. Twenty-two separate deeds were entered as exhibits, some of which refer to the abutting road as a "public road" or "a public right-of-way," others as "a private road," or "an old roadway to other properties." Willard Richardson testified that when he went coon hunting on the road, he noticed that someone had built a box culvert to divert water from heavy rains under the road. He said he didn't know who built the culvert.

Several other county officials testified as to the circumstances behind the issuance of the building permits for Alan Jakes Jr. and Chad and Amanda Burks. John R. Davis, Rutherford County Planning Director, testified that his office issues certificates of zoning compliance, which must be obtained before a building permit is granted. He stated that he thought that the lots in question were entitled to certificates even though they did not abut a public road because they adjoined an old abandoned county road, and because he believed at the time that they were on "an easement that was in existence prior to the 1963 subdivision regulations and, as such, was grandfathered and was acceptable for meeting the criteria for access to get a building permit."

Mr. Davis was closely questioned under cross-examination about the requirements of Tenn. Code Ann. § 13-3-411, which deals with permitting of structures that do not adjoin public roads, and about the subdivision zoning requirements enacted by the County pursuant to that statute. He acknowledged that it was a mistake to issue the building permits in question because the purported easement was not fifty feet wide, as is required by a county regulation promulgated under Tenn. Code Ann. § 13-3-411(3)(A). He further stated that his office had changed its policy so as to prevent the issuance of any more erroneous permits.[6] He denied having any personal or financial interest in

---

[6]Tenn. Code Ann. § 13-3-411 reads in its entirety:

**Erection of buildings or structures on lots accessed by streets not accepted, opened, or otherwise made public**.

(a) From and after the time when the platting jurisdiction of any regional planning commission has attached as provided in § 13-3-402, no building permit shall be issued and no building shall be erected on any lot within the region, unless one (1) of the following three (3) criteria is met:

(1) The street giving access to the lot upon which the building is proposed to be placed has been accepted or opened as, or shall have otherwise, received the legal status of, a public street prior to that time;

(2) The street corresponds in its location and lines with a street shown on a subdivision plat approved by the planning commission, or on a street plat made and adopted by the planning commission; or

(3)(A) The lot fronts upon a permanent easement which conforms to all rules, regulations and specifications applicable to the permanent easement of the planning commission or other department, division or agency of the county; provided, that such rules, regulations, and specifications governing permanent easements shall not take effect until such rules, regulations, and specifications are approved by the county legislative body in a resolution by a two-thirds ( 2/3 ) vote; and

(B) The permanent easement has access to an existing highway, street or thoroughfare, or with a street located or accepted by the county legislative body after submission to the planning commission, and in case of the planning commission's disapproval, by the favorable vote of the county legislative body required in § 13-3-406.

(continued...)

any of the parties, in the building of the houses, in the use of the road, or in the outcome of the lawsuit.

Aaron Holmes, a former assistant to Mr. Davis, testified as to his own role in the process. Mr. Holmes testified that he did not speak to Mr. Davis about the certificates in dispute, but that he followed the interpretation of the zoning ordinance testified to by his superior, which allowed building permits to be issued for property which abutted formerly public roads. Thus, when Ms. Burks came to him with an application, he sent her away and told her she would have to bring in deeds showing that Bowen Road had once been a public road before he granted the application. After two such deeds were produced for his inspection, he approved the certificate of zoning compliance.

Misty Whaley, administrative assistant for Rutherford County Building Codes, issued the disputed building permits. She testified that before issuing such permits, she has to have a certificate of zoning compliance from the planning department, a septic permit, and a building plan with verification of square footage. She further testified that if all such documents are in order, she will issue the building permit without further inquiry. David Jones, the Building Director for the Codes Department testified to the same effect.

At the conclusion of the plaintiffs' proof, the defendants moved the court to dismiss the plaintiffs' complaint on the ground that they were not entitled to any relief based on the facts or the law. The court granted the motion, declaring from the bench that it found that Bowen Road had been a public road at one time and that the County subsequently abandoned the road, leaving all the adjoining landowners with a permanent easement on it. The court also declared that the defendants' predecessors-in-interest did not abandon their right to use Bowen Road, because it was not satisfied that there was sufficient proof that they were aware that they had the right to use that road.

The court also found that the County had issued the building permits in error, and that the Jakes "probably didn't have a right to build a house on it," but they did have a right to use the road since the easement had never been abandoned. The court accordingly concluded that there was no

---

[6](...continued)

(b) The planning commission or other department, division or agency of a county as approved by the planning commission may recommend to the county legislative body regulations to govern a proposed permanent easement in a proposed subdivision, as defined in § 13-3-401. The purpose of the regulations is to ensure that the county is not responsible for the future maintenance of such permanent easement.

(c) Any building erected or to be erected in violation of this section is an unlawful structure, and the state building commission or the county attorney or other official designated by the county legislative body may institute a civil action to enjoin such erection or cause it to be vacated or removed.

trespass.[7] The plaintiffs' complaint was accordingly dismissed as to all defendants.[8] The court's determination was memorialized in an order filed March 12, 2007 and an amended order filed on July 17, 2007, which retained the same basic provisions, but substituted two plaintiffs in place of one who had passed away. This appeal followed.

## IV. THE TRESPASS CLAIM

### A. WAS BOWEN ROAD EVER A PUBLIC ROAD?

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of the correctness of the finding, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The court's conclusions of law are likewise reviewed *de novo*, but without a presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993); *Tennessee Farmers Mutual Ins. Co. v. Moore,* 958 S.W.2d 759, 763 (Tenn. Ct. App. 1997).

The trial court found as a fact that Bowen Road had once been a public road. It accordingly concluded that the defendants were not trespassers because they had a right to use the road, since "[o]wners of property abutting a once public road continue to have a private access easement over that road to their property even after the road loses its character as a public road." *Hall v. Pippin,* 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998)(citing *Kneirim v. Leatherwood,* 542 S.W.2d 806, 810 (Tenn. 1976)). *See also Cartwright v. Bell,* 418 S.W.2d 463 (Tenn. Ct. App. 1967); *Jackson v. Hutton,* 15 Tenn. App. 281 (1932).

The plaintiffs argue that the trial court erred in finding that Bowen Road had ever been a public road. They point out that the defendants did not present any evidence that there had ever been an offer of dedication by the owner of the underlying fee of the roadway or acceptance of such an offer, requirements that must be met before a public road can be carved out of private property. *State ex rel Matthews v. Metropolitan Government,* 679 S.W.2d 946, 948 (Tenn. 1984); *McCord v. Hays,* 302 S.W.2d 331, 333 (Tenn. 1957). Nor was any evidence introduced that the road had ever been used by the general public, but only that it had been used by the landowners whose property adjoined the road, and occasionally by hunters, who were treated as trespassers by the landowners.

For their part, the defendants rely primarily on several references to "public road" and "a public right of way" in ancient deeds to adjoining properties and to the existence of a box culvert on the road that may have been constructed by the County. Plaintiffs point out, however, that each deed

---

[7] The judge noted that the deed from Mr. Baltz to Mr. Jakes apparently granted property "to the center of Bowen Road," and he remarked, "were I to rule otherwise, Mr. Jakes would be within his rights to go and build a fence right down the middle of that road this afternoon."

[8] Although the trial court's ruling from the bench and its final order of March 12, 2007 did not directly reference the plaintiffs' due process claim against the County, the Court's ruling that Mr. Jakes was entitled to use Bowen Road necessarily implies that there was no deprivation of property upon which a due process claim could be based.

cited by defendants is matched by another deed to the same property which uses terms like "an old lane" or "an old roadway to other properties" to refer to the same road. They also note that even if the county built the box culvert as defendants insist, Rutherford County Road Superintendent Mike Williams testified that it was "pretty common" for the county to work on private roads prior to 1974.[9]

The evidence that Bowen Road was ever a public road is somewhat weak. The trial court found that it once was a public road, but that it has not been one since at least 1974. Both parties agree with the court's finding that Bowen Road is not currently a public road. Since we are vacating the trial court's dismissal of the plaintiffs' trespass claim and ordering a new trial on that claim, the prior status of Bowen Road remains a proper subject for litigation during the new trial.

## B. WAS THE EASEMENT ABANDONED?

If we assume, *arguendo*, that the trial court was correct in finding that at some time prior to 1974, Bowen Road was a public road and that the County's failure to maintain the road after that date was due to its abandonment of the road, the question remains whether the adjoining landowners retained their right to use the road after its abandonment by the County. While as a matter of law individuals whose property abuts an abandoned public road may continue to use the easement they enjoyed when the road was public, such an easement, like any other easement, may be abandoned. *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998); *Jacoway v. Palmer*, 753 S.W.2d 675, 677-78 (Tenn. Ct. App. 1987); *Cottrell v. Daniel*, 205 S.W.2d 973, 975-76 (Tenn. Ct. App. 1947)

"In order to prove abandonment, the party with the burden of proof must show not only an intent to abandon the easement, but also external acts carrying that intention into effect." *Hall v. Pippin,* 984 S.W.2d at 620. Although long continued nonuse of (or failure to use) an easement is evidence of an intention to abandon that easement, it is not sufficient, in and of itself, to impair or defeat an easement. *Cottrell v. Daniel*, 205 S.W.2d at 976. However, "intention may be proved with evidence of acts clearly indicating that the easement holder desires to lay no further claim to the benefits of the easement." *Hall v. Pippin,* 984 S.W.2d at 621.

---

[9] Defendants also cite the statement in the plaintiffs' initial complaint that Bowen Road was a county road prior to 1974, and they argue that since the complaint was a sworn pleading, this court should treat that statement as a conclusive judicial admission, or should hold that the plaintiffs are estopped from asserting anything to the contrary. We note, however, that the plaintiffs' initial complaint was withdrawn and replaced by a final complaint in which the suggestion that Bowen Road was ever a county road was withdrawn. The plaintiffs assert that the change came about after they learned the true state of facts, and they submitted proof at trial in support of their new understanding of the road's history. While in the case of *Phoenix Insurance Co. v. Jordan*, 184 S.W.2d 721 (Tenn. Ct. App. 1944), this court stated that a litigant must maintain a consistent position throughout litigation, we also stated that "[w]e do not think the rules require a person who is honestly mistaken about facts to be bound by those facts in a sworn pleading or testimony when it later develops that the information which the party had concerning the facts was incorrect." *Phoenix Insurance Co. v. Jordan*, 184 S.W.2d at 726.

-10-

In *Hall v. Pippin,* this court set out some of the acts which the courts may consider when determining whether the holder or holders of an easement intended to abandon that easement:

> (1) statements by the easement holder acknowledging the easement's existence and disavowing its use, (2) the easement holder's failure to maintain the easement in a condition permitting it to be used for access, (3) the easement holder's acquiescence in the acts of others that reduce the utility of the easement, (4) the easement holder's placement of a permanent obstruction across the easement, or (5) the easement holder's development of alternative access in lieu of the easement.

*Hall v. Pippin*, 984 S.W.2d at 621.

We note that not all the listed acts carry the implication that some sort of vigorous action on the part of the easement holder is required to demonstrate his intent to abandon his easement (note for example, the language "failure to maintain" and "acquiescence"). Further, it is not necessary to prove every single one of these acts in order to effect an abandonment. *See Hall v. Pippin*, 984 S.W.2d at 621; *Cottrell v. Daniel*, 205 S.W.2d at 975 ("[a]bandonment may be proved by either a single act or a series of acts."). However, it is well-established that the burden of proving abandonment rests upon the party asserting it and that it must be proved by clear and convincing evidence. *Hall v. Pippin,* 984 S.W.2d at 620; *Jacoway v. Palmer*, 753 S.W.2d at 679; *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983).

The plaintiffs argue on appeal that the defendants' predecessors-in-interest, Barrett, Parsley and Baltz, each abandoned in turn any right of access they may have had to use Bowen Road and, therefore, that they could not and did not convey any such right to Alan Jakes, Sr. While the record indicates that none of the landowners in the Jakes' chain of title used Bowen Road more than occasionally or sporadically, it is the conduct of the Parsleys and of Ronald Baltz that is most relevant to our inquiry, because as owners of the land after 1974, it cannot be disputed that any actions they undertook in regard to Bowen Road must be viewed in relation to the easement they purportedly retained as adjoining landowners.

The proof shows that neither the Parsleys nor Mr. Baltz ever did anything to contribute to the maintenance of Bowen Road or to improve their access to it. It remained a narrow, unpaved and little-used road throughout the relevant time period. The condition of the road was of little concern to those landowners because they used it so infrequently. Henry Parsley even reduced its length by obliterating its northernmost stretch for his pastures. During the entire time of their ownership, an unbroken fence and tree line blocked Bowen Road from the property that was eventually sold to Mr. Jakes.

The placement of a gate across Bowen Road to prevent access from Trimble Road was met with acquiescence from both the Parsleys and Baltz. The Parsleys obtained a key so they could use the road, but Henry Parsley testified that he used it very sparingly, only four times in fourteen years. Mr. Baltz did not even have a key, and he apparently did not feel the need to obtain one, for he

-11-

testified that he used Bowen Road only once in the thirteen years of his ownership of the farm property. The landowners were not interested in Bowen Road because they enjoyed better access to their property by way of Trimble Road, a paved roadway maintained by Rutherford County. They maintained both primary and secondary entrances to their property which opened onto Trimble Road.

It appears that the first time that Ronald Baltz thought of access to Bowen Road as being of a substantial benefit to his property was when he decided to sell the property and considered subdividing part of it into five acre tracts adjacent to that road. According to the affidavit filed with the plaintiffs' complaint, once Mr. Baltz learned that the Rutherford County Planning Director took the position that Bowen Road was an abandoned road and that he could not carry out his plan, "I disavowed any rights I may have had in using Bowen Road."

The conduct of the Parsleys and even more so that of Ronald Baltz closely matches the acts described in *Hall v. Pippin* as evidence of an intent to abandon an easement: failure to maintain the easement in a condition permitting it to be used for access, acquiescence in the acts of others that reduce the utility of the easement including placement of a permanent obstruction across the easement, and the development and maintenance of alternate access to the easement holder's property. Finally, we have an explicit statement by Mr. Baltz, the final easement holder, disavowing any use of the easement.

We note that the trial court considered the plaintiffs' arguments in regard to abandonment but came to a different conclusion. It reasoned that Mr. Baltz's disavowal of his rights was ineffective because there was no evidence that Ronald Baltz or the Parsleys were aware of the existence of the easement. In its ruling from the bench, the court stated,

> I'm satisfied that if Mr. Baltz had thought he had a right to use that road and build lots off of it, instead of having two houses on that side of the road, would probably have many, many more . . . without some indication that some of these people knew they had the right to use that road and gave it up, I can't find it. There's no abandonment.

The record indicates that the County correctly informed Mr. Baltz that he was not entitled to sell tracts of his land that did not adjoin Trimble Road, and that the building permits obtained by Mr. Jakes were granted in error. We cannot infer, however, from his acceptance of the Planning Director's decision that the land could not be subdivided in the way he wished that Mr. Baltz did not know or believe that he could use Bowen Road for other purposes. We conclude on the basis of our examination of the entire record, including the testimony of Henry Parsley and Ronald Baltz, that the Parsleys and Mr. Baltz were aware that they could use Bowen Road if they needed to or wanted to, but that they used it only sparingly because they had better access to their property by way of their entrances on Trimble Road. We therefore find that, contrary to the trial court's determination, there is sufficient evidence in the record to make out a *prima facie* case that Ronald Baltz desired "to lay no further claim to the benefits of the easement," and that he abandoned the easement to the roadway prior to the sale of the property to Alan Jakes, Sr.

We note, however, that as a result of the trial court's dismissal of the complaint at the close of the plaintiffs' proof, none of the defendants testified at trial, nor did they call any witnesses on their behalf. In other words, the dependents had no opportunity to present evidence on the issue of abandonment, or other issues. We therefore vacate the trial court's dismissal of the plaintiffs' trespass claim and remand this case to the trial court for a new trial on that claim.[10]

## V. THE DUE PROCESS CLAIM

The plaintiffs' fourth amended complaint included a due process claim against Rutherford County. The plaintiffs contended that by erroneously granting building permits to Alan Jakes, Jr. and Chad and Amanda Burks, the County allowed the defendants to trespass on Bowen Road, thereby depriving the plaintiffs of a valuable property right: the exclusive use of their easement. The trial court dismissed the complaint "as to all defendants" without commenting specifically on the claim against the County. No comment or explanation would have been necessary under the circumstances, for if there was no trespass, neither could there have been any deprivation of property rights. Since we are vacating the trial court's ruling as to trespass, however, we must take a fresh look at the plaintiffs' due process claim.

The Fifth and Fourteenth amendments to the United States Constitution prohibit government from depriving persons "of life, liberty, or property without due process of law." Due process includes both procedural and substantive protections.

> The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner... In contrast, substantive due process limits oppressive government action, such as deprivations of fundamental rights like the right to marry, have children, make child rearing decisions, determine child custody, and maintain bodily integrity.

*Lynch v. City of Jellico,* 205 S.W.3d 384, 391-392 (Tenn. 2006)(internal citations omitted).

The plaintiffs' theory was that in refusing to allow Ronald Baltz to subdivide his property along Bowen Road and then by subsequently granting building permits to the defendants, Rutherford County Planning Director John Davis acted in an arbitrary and irrational manner, and "therefore

---

[10]We note that if the trial court determines after a new trial that Mr. Jakes' predecessors-in-interest did abandon the easement on Bowen Road, it would follow as a matter of law that there could be no conveyance of the easement from Mr. Jakes to his children because "It is axiomatic that the Grantor...can convey no greater rights or interests than it owns." *Conatser v. Ball,* No. M1999-00583-COA-R3-CV, 2001 WL 873457 at *4 (Tenn. Ct. App. August 3, 2001)(no Tenn. R. App. P. 11 application filed)). However, insofar as the property of Alan Jakes, Jr. and Amanda Burks are landlocked, they would still retain an easement of necessity to Trimble Road over the property of their grantor, Alan Jakes, Sr. *See Morris v. Simmons*, 909 S.W.2d 441 (Tenn. Ct. App. 1993); *Hill v. Beaver*, 454 S.W.2d 718 (Tenn. Ct. App. 1969).

deprived Plaintiffs of property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution . . . ." The plaintiffs did not characterize their claim as one for procedural due process, presumably because they could not demonstrate any particular process that they were entitled to receive in connection with a stranger's application for a building permit.

For purposes of substantive due process analysis, our courts have drawn a distinction between legislative and non-legislative acts, and have stated that "a non-legislative or executive act will withstand a substantive due process challenge unless it is (1) arbitrary, irrational, or tainted by improper motive, or (2) so egregious that it shocks the conscience of the court." *Parks Properties v. Maury County,* 70 S.W.3d 735, 744 (Tenn. Ct. App. 2001). The proponent of a substantive due process claim does not merely contend that there was a flaw in the process by which he lost a fundamental right. Rather, the claim is that he or she suffered a loss that is "so far beyond the outer limits of legitimate governmental action that no amount of process could cure the deficiency." *Parks Properties v. Maury County*, 70 S.W.3d at 744.

Mr. Davis admitted and the trial court found as a fact that the building permits in question were granted in error. But proof that a governmental act was erroneous is not sufficient, in and of itself, to support a substantive due process claim, even when that erroneous act has caused harm. The Due Process Clause "is not intended as a guarantee that governmental officials will not act ineptly, erroneously, mistakenly, or even negligently. It addresses deliberate conduct intended to injure in some way that cannot be justified by any governmental interest." *Id.*

Both John Davis and Aaron Holmes admitted that the disputed building permits were issued in error. It appears that the error was induced by an interpretation of the zoning ordinance that was correct as far as it went, but was inadequate because it did not take into account the requirement that a lawful structure can only be erected upon a lot that abuts a permanent easement if the easement meets the specifications Tenn. Code Ann. § 13-3-411(3)(A) and the relevant local regulations.

In accordance with the County's interpretation, Mr. Holmes refused to issue certificates of zoning compliance until the defendants produced deeds that indicated that Bowen Road had was once a public road. County officials also failed to consider the possibility that a permanent easement in a right-of-way created by operation of law after the abandonment of a formerly public road might itself be abandoned by adjoining landowners. There was no evidence that any of the public officials who testified had any questionable connections to the defendants or stood to benefit in any way from the issuance of the disputed building permits.

There is no explanation in the record as to the reasons Mr. Baltz and Mr. Perry were previously told that Mr. Baltz could not subdivide his property into lots whose only access was to Bowen Road. Mr. Baltz testified that he spoke to someone by telephone at the County and that he was not even sure to whom he had talked, but that he assumed it was someone from the planning department. For his part, Mr. Perry testified that he had an informal conversation with Mr. Davis three months before the auction, and that Mr. Davis told him he couldn't cut tracts off of Bowen

Road.  When Mr. Perry told him that there already were some tracts along that road, "[h]e told me they shouldn't have ever been and they weren't going to be no more."  There is no evidence that Mr. Davis knew or believed at the time that Bowen Road had ever been a public road.

In light of all the circumstances in the record, it appears to us that Rutherford County officials attempted to perform their duties to the best of their understanding.  The evidence shows that their conduct did not rise to the level of "arbitrary, irrational, or tainted by improper motive," "so egregious that it shocks the conscience of the court," or "so far beyond the outer limits of legitimate governmental action."  Consequently, we affirm the trial court's dismissal of the due process claim against the County.

## VI.

The trial court's dismissal of the trespass claim against the defendants is vacated.  In all other respects the trial court's order is affirmed.  We remand this case to the Chancery Court of Rutherford County for additional proceedings consistent with this opinion.  Tax the costs on appeal to the appellees, Alan Jakes, Sr., Alan Jakes, Jr., and Chad and Amanda Burks.

_____
PATRICIA J. COTTRELL, P.J., M.S.