IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2024

## PEOPLE FIRST AUTO SALES, LLC ET AL. v. CITY OF MEMPHIS, TENNESSEE ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-21-1366-I      Melanie Taylor Jefferson, Chancellor**

_____

**No. W2024-00323-COA-R3-CV**
_____

A business sought a special use permit from the City of Memphis to operate a used car lot. At a meeting of the city council, the council voted to remand the business's application back to the local land use control board. At the next meeting, the council reconsidered the application and denied it. The business filed a writ of certiorari challenging the denial, alleging due process violations and stating that the council failed to follow its rules of procedure. The trial court found that no due process right applied and that the council had properly followed its rules of procedure. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Malcolm Brown Futhey, III, and Harley Marie Chapman, Memphis, Tennessee, for the appellants, People First Auto Sales, LLC, and Octopus Group, Inc.

Allan Jerome Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellees, City of Memphis, Tennessee and Memphis City Council.

### OPINION

This appeal concerns an attempt by People First Auto Sales, LLC ("People First") and Octopus Group Inc. ("Octopus Group") to obtain a special use permit from the City of Memphis ("the City") to operate a car dealership on Old Austin Peay Highway. On December 1, 2020, People First applied to the Shelby County Department of Planning and Development ("the DPD"). The DPD's staff evaluated the application pursuant to the Memphis and Shelby County Unified Development Code ("the UDC"), produced a report finding that the application was not consistent with the requirements of the UDC, and

recommended the special use permit be rejected. On February 11, 2021, the Shelby County Land Use Control Board ("the LUCB") held a public hearing on the application and recommended approval so long as Octopus Group met certain conditions. Octopus Group's owner, Fred Sengstacke, was present at this meeting.

The application was placed on the Memphis City Council's ("the Council's") March 16, 2021 regular agenda for consideration. Octopus Group's representatives attended this meeting via telephone. At this meeting, the Council voted to table consideration of the application so that the local council member could hold community meetings on the application. On July 20, 2021, the Council considered the application, again with a representative of Octopus Group present. At this meeting, the Council voted to remand the application back to the LUCB for further consideration.

The Council's actions that are the subject of this appeal occurred at its meeting on August 3, 2021, when the Council took up approving the minutes of the July 20 meeting. Prior to the vote, a member of the Council made a motion to reconsider Octopus Group's application. As his reason for reconsidering the application, the council member stated that he had received several emails from the community opposing the proposed use. Several other council members voiced concern that the Council was acting without a representative of Octopus Group present and without sending formal notice to Octopus Group that the Council would be reconsidering the application. The council member who sought reconsideration, however, argued that Octopus Group had been fully heard on the application. The Council then voted to reconsider the application and disapproved the special use permit application.

On October 1, 2021, Octopus Group filed a petition for writs of certiorari and supersedeas in the Chancery Court for Shelby County. In the petition, Octopus Group asserted that the Council violated its due process rights under the Fourteenth Amendment to the United States Constitution and the similar rights granted under the Tennessee Constitution by voting to reconsider and subsequently disapprove its application without notice. Octopus Group also asserted that the action violated the Council's own rules of procedure.[1] After a hearing on the petition, the trial court entered a writ of certiorari on February 9, 2022.

---

[1] Octopus Group asserted that the Council violated Rule 40 of the Memphis City Council Rules of Procedure, which provides:

> All proposed ordinances, resolutions, motions, and other matters submitted by Council Members shall be submitted in writing to the Council Office by 10:00 a.m. THURSDAY, except that a Council Member may give notice of an ordinance or resolution and the same shall be considered at TUESDAY meetings if, in fact, the Council Member presents it in writing by the Tuesday meeting. Only items involving extreme emergencies may be added to the agenda after the Thursday, 10:00 a.m. deadline; provided, also, that two or more Members of the Council may voice their objections thereto and said items shall be added to the next regular agenda.

In its trial brief, the Council asserted that neither People First nor Octopus Group had standing to challenge the actions at issue because Octopus Group had transferred the property to another entity after filing the lawsuit. The Council also argued that its actions did not violate Rule of Procedure 40 because the Council followed the procedure set forth in Rule of Procedure 39(b), which governs motions to reconsider.

A final hearing was held on the petition on June 22, 2022. On September 16, 2022, the trial court entered an order finding that People First lacked standing to challenge the Council's actions and dismissed People First's claim. Therefore, Octopus Group proceeded as the sole petitioner. After determining that Octopus Group had no protected property interest in the permit, the court found that the Council had violated its own rules of procedure and that the Council's actions were, therefore, arbitrary. The court reversed the Council's decision and remanded the matter back to the Council.

On October 14, 2022, the Council filed a motion to alter or amend the final judgment pursuant to Tennessee Rule of Civil Procedure 59, arguing that the court's final order contained clear errors of law. The Council asserted that the court erred by failing to give adequate weight to the wording of the Council's rules of procedure and by considering evidence not in the record before the court. The Council asserted that the language of Rule 39, which governs motions to reconsider, provides the only requirements for the Council to vote on a motion to reconsider and that, therefore, Rule 40's requirements were inapplicable to a motion to reconsider. The Council also asserted that the court's finding that the Council "selective[ly] enforce[s]" Rule 40's requirements was not based on evidence in the record. On February 9, 2024, the court entered an order granting the Council's motion and dismissing Octopus Group's petition, stating in relevant part that the court interpreted Rule 39(b) as allowing the Council to reconsider a matter after it appeared on the agenda and was acted upon by a majority vote before the minutes of the majority vote have been approved. The court interpreted Rule 40 as requiring new items proposed by council members to be submitted to the council office to be placed on the agenda. Further, the court found that Rule 40 did not apply to a member's "parliamentary motion" to reconsider a matter under Rule 39(b).

Octopus Group timely appealed and presents the following issues for our review: did the court err by (1) finding that the Council did not violate Octopus Group's due process rights; (2) finding that the Council did not act fraudulently or deceptively; and (3) finding that the Council did not act arbitrarily or capriciously by violating Rule 40.

STANDARD OF REVIEW

The remedy of certiorari provided in Tenn. Code Ann. §§ 27-8-101, 27-9-10 to -113,[2] is the proper method by which individuals may challenge or overturn administrative

---

[2] The common law writ of certiorari is codified at Tenn. Code Ann. § 27-8-101, which provides:

decisions, which are judicial or quasi-judicial in nature. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). "In order to qualify as an administrative, judicial, or quasi-judicial act, the discretionary authority of the government body must be exercised within existing standards and guidelines." *Id.* Our Supreme Court has instructed that when municipal legislative bodies reserve to themselves the power to grant or deny permits through an ordinance containing a rule or standard to govern them, a later decision implementing this authority is regarded as administrative, as opposed to legislative, in nature. *Id.* (citing 8A E. McQuillin, THE LAW OF MUNICIPAL CORPORATIONS, § 25.217, at 160-61 (3rd ed. 1986)). This Court has stated the standard of review in certiorari actions as:

> The scope of review under the writ of certiorari is quite limited. In common law of writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision.
>
> Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision; (2) reweigh the evidence; or (3) substitute their judgment for that of the lower tribunal. It bears repeating that common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker.
>
> Further, illegal, arbitrary or fraudulent actions include: (1) the failure to follow the minimum standards of due process; (2) the misrepresentation or misapplication of legal standards; (3) basing a decision on ulterior motives; and (4) violating applicable constitutional standards. The same limitations apply to the scope of review of the appellate courts, which "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board."

*Walker v. Metro. Bd. of Parks & Recreation*, Nos. M2007-01701-COA-R3-CV, M2008-01226-COA-R3-CV, M2008-02218-COA-R3-CV, M2008-01748-COA-R3-CV, 2009 WL 5178435, at *11-12 (Tenn. Ct. App. Dec. 30, 2009) (citations omitted) (quoting *Watts v. Civ. Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980)).

---

The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

ANALYSIS

I.      Octopus Group's Due Process claims

The trial court found that Octopus Group had not put forward an interest entitled to due process protection. On appeal, Octopus Group continues to assert it was denied due process under both the United States and Tennessee Constitutions. Octopus Group puts forward two actions by the Council that it asserts violate due process: the reconsideration of its application without prior notice and the Council allegedly accepting new evidence (the emails from the community opposing the proposed use). Octopus Group also argues that a protected property interest is not necessary for procedural due process protections to apply here. For the reasons given below, we do not accept Octopus Group's argument that it need not assert a property interest as compelling. Moreover, Octopus Group has failed to show that it possessed a protected property interest.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The "law of the land clause" in the Tennessee Constitution states that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." TENN. CONST., art. 1, § 8. Our Supreme Court has found that this clause "provides protections similar to those provided by the due process clause in the federal Constitution." *Keller v. Casteel*, 602 S.W.3d 351, 357 (Tenn. 2020) (citing *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 230 (Tenn. 2010)); *see also Worrell v. Obion Cnty. Sch. Dist.*, 694 S.W.3d 158, 165 (Tenn. 2024) ("This 'law of the land' provision has 'consistently been interpreted as conferring identical due process protections' as the Fourteenth Amendment.") (quoting *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 407 (Tenn. 2013)). Therefore, we will address the protections afforded by procedural due process as a whole instead of addressing each constitution's protections separately.

"[P]rocedural due process requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in 'life, liberty, or property.'" *Parks Props. v. Maury Cnty.*, 70 S.W.3d 735, 743 (Tenn. Ct. App. 2001). However, "[p]rocedural due process protections do not prevent deprivations of 'life, liberty, or property' but rather guard against 'substantively unfair or mistaken deprivations of property.'" *Id.* (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972)). Our Supreme Court has provided the analysis courts are to undertake for a procedural due process claim:

> When a person asserts a procedural due process claim, the court must first determine whether he or she has an interest entitled to due process protection. If the court determines that the person has an interest that is

entitled to constitutional due process protection, then the court must determine "what process is due." Once the court determines minimum procedural due process protections to which the person is entitled, the court must finally determine whether the challenged procedures satisfy these minimum requirements.

*Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 731 (Tenn. 2012) (citations omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Octopus Group asserts three arguments for why it should have been afforded due process protection. First, it asserts that "due process is an intrinsic part of the writ of certiorari review." Second, it asserts that the Council's action affected a property interest because of Octopus Group's inability to apply for a permit for five years. Third, it asserts that all judicial and quasi-judicial proceedings must comport with procedural due process regardless of whether a life, liberty, or property interest is affected.

We begin our analysis of whether due process protections applied to the present case with the first step in the analysis our Supreme Court has laid out: whether Octopus Group asserted an interest entitled to due process protection. *See id.* Octopus Group asserts that it possessed a property interest that was affected by the Council's decision because it cannot reapply for a special use permit for the next five years.[3] Octopus Group asserts that this restriction on the property alone is sufficient to "trigger Due Process." In support of this assertion, Octopus Group cites *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991), and its statement that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." However, this case is inapposite because it is discussing when a state may attach property such that it, at least partially, deprives the individual of his or her property. This is not the situation here, as the City is not placing an encumbrance on the property.

The City has not dispossessed Octopus Group of anything. Rather, Octopus Group is challenging the denial of a special use permit and its inability to reapply as of right for five years. Octopus Group fails to cite to any authority showing that being unable to reapply for a permit deprived it of a protected property interest, nor has Octopus Group asserted that it was entitled to the permit such that it had a property right in the permit itself. "When seeking a permit or authorization, a developer has a protectable property interest in a permit or authorization only if it can prove that it has a legitimate claim of entitlement to the permit or authorization." *Parks*, 70 S.W.3d at 746 (citing *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989)); *see also Durham v. Eley*, 507 F.Supp.3d

---

[3] Pursuant to UDC 9.6.13.A, "If the governing body votes to deny an application, there may be no subsequent similar application submitted by any party for any part of the subject property until 5 years have elapsed from the date of denial, or from the date any appeal thereof becomes final, whichever is later."

956, 963-64 (M.D. Tenn. 2020) (applying the legitimate claim of entitlement test in the context of procedural due process). We have found nothing in the applicable caselaw supporting Octopus Group's assertion that the inability to apply for a permit alone is sufficient to establish a property right.[4]

Octopus Group has failed to show that it was being deprived of a protected property interest in either the permit itself or the subject property.[5] Absent a protected property interest, Octopus Group asserts two arguments for why due process protections applied to the Council's actions. To succeed in these arguments, Octopus Group must establish a constitutionally protected interest other than a property interest. We begin with Octopus Group's first remaining argument that "due process is an intrinsic part of the writ of certiorari." Octopus takes this argument from the standard of review courts employ when reviewing actions under the writ of certiorari. The Tennessee Supreme Court has stated the scope of review in these actions as "whether 'the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently.'" *McCallen*, 786 S.W.2d at 638 (quoting *Hoover Motor Exp. Co. v. R.R. & Pub. Utils. Comm'n*, 261 S.W.2d 233, 238 (Tenn. 1953)). In a later opinion, the Supreme Court further clarified what constitutes an "illegal, arbitrary, or fraudulent" action as "1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards." *Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007). Octopus Group interprets this language as the Supreme Court integrating due process rights into certiorari review. Respectfully, Octopus misunderstands these standards.

Under the certiorari standard of review, courts are directed to consider whether the lower tribunal "follow[ed] the minimum standards of due process." *See id.* However, the "standards of due process" remain controlled by applicable constitutional law, i.e., that a protected interest is required. Property interests that may be afforded protection from deprivation under the due process clause "are created and their dimensions are defined by existing rules and understandings that stem from independent sources such as state law." *Parks*, 70 S.W.3d at 745 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The certiorari standard of review does not meet this requirement. State law is quite clear that, when an individual asserts a due process claim, the threshold step for a court to undertake

---

[4] Because Octopus Group has not asserted a cognizable property interest, we need not delve into the Council's argument that the decision to grant or deny a special use permit is discretionary.

[5] Similarly, we do not find a property interest in the money Octopus Group spent in pursuance of the permit as the Council did not deprive Octopus Group of this money, making it irrelevant to the due process analysis. *See, e.g., Parks*, 70 S.W.3d at 743 ("[P]rocedural due process requires state and local governments to employ fair procedures when *they deprive* persons of a constitutionally protected interest[.]") (emphasis added).

is whether the individual has asserted an interest entitled to due process protection. *Keller*, 602 S.W.3d at 357; *Heyne*, 380 S.W.3d at 731; *Rowe v. Bd. of Educ. of City of Chattanooga*, 938 S.W.2d 351, 354 (Tenn. 1996). For this Court to allow a standard of review to supplant the due process analysis outlined by both the United States Supreme Court and the Tennessee Supreme Court would be untenable.

Octopus Group's remaining argument that due process rights applied to the Council's reconsideration of its application is that procedural due process rights apply to all judicial and quasi-judicial proceedings, regardless of whether a life, liberty, or property interest is affected. In support of this, Octopus Group cites to the case *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), and its statement that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." However, Octopus Group's reliance on this quote overlooks the prerequisite to due process applying found earlier in the opinion, that "there can be no doubt that at a minimum [the words of the Due Process Clause] require that *deprivation of life, liberty or property* by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313 (emphasis added). The opinion then discussed how the party was deprived of its property. As explained above, Octopus Group has failed to adequately show that it had a protected property interest in the permit or that it has been deprived of the physical property at issue. We, therefore, are unpersuaded by this argument.

The remaining cases cited by Octopus Group in support of this argument all fail to negate the requirement that Octopus Group show as a threshold matter that it is asserting an interest sufficient to be entitled to constitutional protection. Therefore, we agree with the trial court's conclusion that due process, whether under the United States or Tennessee Constitutions, did not apply to the Council's reconsideration of Octopus Group's special use permit application.

II.     Whether the Council acted fraudulently.

Octopus Group asserts that the Council acted fraudulently when it voted to remand its application back to the LUCB but then reconsidered and denied its application at a subsequent meeting. The determination of whether the Council acted illegally, arbitrarily, or fraudulently is a question of law. *Harding Acad.*, 222 S.W.3d at 363. As stated above, illegal, arbitrary, or fraudulent actions include: "1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards." *Id.*

Although our Supreme Court has provided the above list of four examples of fraudulent actions, we find little other guidance on determining whether a city council has acted fraudulently, and the parties provide none. However, this Court has discussed what constitutes fraud in other contexts, stating, "[t]he essence of fraud is deception." *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005). Generally, "fraud is a trick or artifice or other use of false information[.]" *Id.* (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 301 (Tenn. Ct. App. 2001)).

From the record before us, we cannot say that the Council acted fraudulently. Octopus Group asserts, "The Council's sudden about-face amounted to fraud or deceit that misled Octopus Group and resulted in a surreptitious rejection of Octopus Group's application." However, as discussed below, the Council acted pursuant to one of its published rules of procedure, which provided for reconsideration of a matter before the minutes of the previous meeting had been finalized. It is plain from the rules of procedure that, prior to the approval of the previous meeting's minutes, "any matter which has appeared on the agenda and has been acted upon by either a majority vote for approval or rejection, may be brought before the Council for reconsideration[.]" MEMPHIS CITY COUNCIL R. P. 39(b). "As a general rule, every citizen is presumed to know the law." *Burks v. Elevation Outdoor Advert., LLC*, 220 S.W.3d 478, 492 (Tenn. Ct. App. 2006). Similarly, reconsideration of a matter at a subsequent meeting is a recognized parliamentary procedure. *See, e.g.*, 59 AM. JUR. 2D *Parliamentary Law* § 18 (discussing the requirements for a motion to be reconsidered at a later meeting). Therefore, Octopus Group was presumed to know that the Council's vote on its application could be reconsidered at the start of the next meeting.

It appears that Octopus Group is asserting that the Council initially voted to remand the application back to the LUCB and then denied the application upon reconsideration to prevent Octopus Group from opening a car repair garage on the property. However, there is no evidence in the record that the Council took these actions to trick or otherwise deceive Octopus Group. Therefore, we agree with the court that Octopus Group has failed to show fraud.

III.    Whether the Council acted arbitrarily

Finally, Octopus Group asserts that the Council acted arbitrarily by failing to follow its rules of procedure because Memphis Council Rule of Procedure 40 required all motions to be submitted in writing the Thursday before a hearing, and the Council failed to follow this rule when it took up the motion to reconsider. For the reasons below, we find that the Council acted in accordance with its rules and, therefore, did not act arbitrarily.

Courts are empowered to review whether an acting body followed its own procedures. *Steppach v. Thomas*, 346 S.W.3d 488, 499 (Tenn. Ct. App. 2011). We apply the general rules of statutory interpretation when construing administrative rules, such as

the Council's rules of procedure. *See Hammond v. Harvey*, 410 S.W.3d 306, 310 (Tenn. 2013) (stating that general rules of statutory construction applied to a county board's administrative rules). Applying this principle, the construction or interpretation of the Council's Rules of Procedure is a question of law. *See Steppach*, 346 S.W.3d at 504 ("The construction or interpretation of a statute is a question of law."). When a court undertakes the interpretation of a statute, "we seek to 'ascertain and give effect to the legislative intent[.]'" *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) (quoting *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020)). Our Supreme Court has recently elucidated the following standards to achieve this goal:

> [W]e look first and foremost to the text of the statute because the statutory language is of primary importance. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004)); *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). We give the statute's words "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills*, 360 S.W.3d at 368); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). When those words are clear and unambiguous, we derive the legislative intent from the plain meaning of the statutory language and simply enforce the statute as written. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022); *In re Bentley D.*, 537 S.W.3d 907, 911 (Tenn. 2017) (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)). If, however, statutory language is ambiguous, we may consider other sources to discern the legislative intent. *In re Bentley D.*, 537 S.W.3d at 912 (quoting *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015)); *see also Lee Med., Inc.*, 312 S.W.3d at 527-28. "We endeavor to construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws." *Wallace v. Metro. Gov't of Nashville & Davidson Cnty.*, 546 S.W.3d 47, 52-53 (Tenn. 2018) (quoting *Ray v. Madison Cnty.*, 536 S.W.3d 824, 831 (Tenn. 2017)).

*Flade v. City of Shelbyville*, 699 S.W.3d 272, 285 (Tenn. 2024).

The central disagreement between the parties is whether the trial court erred in finding that "Rule 40 does not apply to a member's parliamentary motion to reconsider a matter under Council Rule 39(b) that has already appeared on an agenda and has been acted upon by the Council." We begin our analysis with the text of the rules.

Rule 40 of the Memphis City Council Rules of Procedure is titled "ADDED Items for Agenda by Council Members" and provides in pertinent part that "All proposed ordinances, resolutions, motions, and other matters submitted by Council Members shall be submitted in writing to the Council Office by 10:00 a.m. THURSDAY[.]" The rule

- 10 -

further provides that "Only items involving extreme emergencies may be added to the agenda after the Thursday, 10:00 a.m. deadline[.]" MEMPHIS CITY COUNCIL R. P. 40. Rule 39(b) provides, in relevant part, that:

> Any matter which has appeared on the agenda and has been acted upon by either a majority vote for approval or rejection, may be brought before the Council for reconsideration upon proper motion of a Council Member and seconding motion by another Council Member.
>
> The only requirements for this action are:
> 1. The Member making the motion for reconsideration must have voted on the prevailing side of the initial vote. A Member, regardless of how he voted on the Motion to be Reconsidered, may Second the Motion.
> 2. Such motion for reconsideration must be made prior to approval of the Minutes in which the first vote was cast.
> 3. The Motion to Reconsider is not amendable.
> 4. No question can be reconsidered twice unless it was materially amended during its first reconsideration.

We conclude that Rule 40 only applies to matters that will be placed on the Council's agenda and not to oral motions that are made during a council meeting, such as a motion to reconsider. Rule 40's title indicates that it is meant to govern the procedure for adding items to the Council's agenda, and the rule contains language providing that it applies to matters "submitted by Council Members" to the Council office that prepares the agenda. We agree with the Council that the word "submit" in the rule indicates that the rule governs the procedure by which a Council member submits matters to be placed on the agenda as opposed to the process of making a verbal motion during a meeting. Further, the rule's inclusion of the procedure for adding an item to the agenda after the rule's deadline has passed indicates that it is only meant to govern matters added to the agenda. A Council member would make a motion to reconsider during the appropriate time in a meeting, thus making it "proper" under the rule's language, meaning that the motion is not placed on the agenda and, therefore, is not meant to be submitted to the Council office. Therefore, unless a member wishes to place a motion to reconsider on the agenda, Rule 40 is inapplicable to these motions.

Rule 39, however, under its plain language governs the process for the Council to reconsider a matter on which it has previously voted. "[T]he legislative body of a municipal corporation, like all deliberative bodies, possesses the undoubted right to vote and reconsider its vote upon measures before it[.]" 4 McQuillin THE LAW OF MUNICIPAL CORPORATIONS § 13:73 (3d ed.). "If the law does not forbid, the legislative body may adopt its own rules or parliamentary practice as to the right and method of reconsideration." *Id.* Therefore, under our interpretation of the rules of procedure, Rule 40 applies to motions that will be placed on the Council's agenda. Rule 39, however, governs the reconsideration

of matters previously placed on the agenda and voted on by the Council. The two rules, therefore, do not conflict, nor do they necessarily overlap.

Even if we were to interpret the rules as potentially in conflict, we would also apply the rule of statutory construction that, when two statutory provisions are in conflict, the more specific of the two provisions will control. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016). Rule 39 is the more specific of the two rules and provides numerous requirements for reconsidering a matter. Rule 39's structure first lays out the requirements for a matter to possess the right to be reconsidered ("Any matter which has appeared on the agenda and has been acted upon by a majority vote[.]"). The rule then lays out the proper method of reconsideration, enumerating "the only requirements" for this action. The plain meaning of the word "only" indicates that motions to reconsider are subject to the four subsequent provisions alone and that a motion to reconsider is not subject to Rule 40's more general provisions. Notably absent from these four provisions is any indication that the motion must be submitted in writing or that prior notice must be given.

This interpretation of the rules is also in harmony with several other rules of statutory construction. First, as both rules include that they govern motions, depending on their interpretation, there is potential that they may overlap or involve the same subject matter. A common rule of statutory construction is that statutes that involve the same subject matter should be construed harmoniously to avoid conflict. *State v. Turner*, 193 S.W.3d 522, 526 (Tenn. 2006). Because Rule 39's provision provides the only requirements for a motion to reconsider, to subject these motions to Rule 40's provisions would necessarily make the rules conflict. Interpreting Rule 40 as governing placement of items on the agenda avoids this potential conflict. Second, this interpretation follows the rule of statutory construction that courts should not "apply a particular interpretation to a statute if that interpretation would yield an absurd result." *State v. Sims*, 45 S.W.3d 1, 11 (Tenn. 2001). To interpret Rule 40 to require all motions to be submitted in writing to the Council office would create an absurd result as oral motions are a standard part of parliamentary procedure. We, therefore, decline to adopt Octopus Group's interpretation of the rules and affirm the trial court's order altering or amending the judgment.[6]

We, therefore, affirm the trial court's ruling that Octopus Group did not possess a constitutionally protected interest in the permit and that the Council did not act illegally, arbitrarily, or fraudulently.

---

[6] We are similarly unpersuaded by Octopus Group's argument that "reconsideration is a two-step process," as this argument is based upon the standard for reconsideration as used in federal court. The Council is not bound by the process used in a wholly different tribunal.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Octopus Group Inc., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE